# Illinois Official Reports

## Appellate Court

*North Spaulding Condominium Ass'n v. Cavanaugh*, 2017 IL App (1st) 160870

| | |
|---|---|
| Appellate Court Caption | NORTH SPAULDING CONDOMINIUM ASSOCIATION, an Illinois Not-for-Profit Corporation, Plaintiff and Counterdefendant-Appellee v. MICHAEL CAVANAUGH and TIFFANY CAVANAUGH, Defendants and Counterplaintiffs-Appellants. |
| District & No. | First District, Second Division<br>Docket No. 1-16-0870 |
| Rule 23 order filed<br>Motion to publish<br>granted<br>Opinion filed | February 14, 2017<br><br>March 27, 2017<br>March 31, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-M1-717924; the Hon. David A. Skryd, Judge, presiding. |
| Judgment | Affirmed in part; vacated in part; remanded with instructions. |
| Counsel on Appeal | Kory Cotter Heather & Richardson, LLC, of Chicago (Elliot Richardson, Britney Zilz, and Ryan D. Gibson, of counsel), for appellants.<br><br>Girard Law Group, P.C., of Chicago (Andrew A. Girard and John G. Powers, of counsel), for appellees. |

JUSTICE PIERCE delivered the judgment of the court, with opinion.
                          Justices Neville and Mason concurred in the judgment and opinion.


**OPINION**

¶ 1        Plaintiff North Spaulding Condominium Association (North Spaulding) initiated a forcible entry and detainer action against the defendant unit owners Michael and Tiffany Cavanaugh (collectively, the Cavanaughs) for unpaid assessments, seeking possession of the unit and a money judgment. In *North Spaulding Condominium Ass'n v. Cavanaugh*, 2017 IL App (1st) 153387-U (*North Spaulding I*), we affirmed the trial court's dismissal of the Cavanaughs' counterclaim against North Spaulding and the Cavanaughs' third-party complaint against Westward Management, Inc. (Westward). While *North Spaulding I* was on appeal, the forcible case proceeded to a bench trial. After the close of the condominium association's case in chief, the Cavanaughs moved for judgment in their favor pursuant to section 2-1110 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1110 (West 2014)). The trial court denied the motion. The Cavanaughs rested without presenting any witnesses or introducing any evidence. The trial court entered judgment in favor of North Spaulding. The Cavanaughs filed a combined motion for a new trial and to reconsider the denial of their motion for judgment in their favor, which the trial court denied. The trial court then granted North Spaulding's petition for attorney fees. The Cavanaughs timely appeal. For the following reasons, we affirm in part, vacate in part, and remand.

¶ 2                          BACKGROUND
¶ 3        A more complete procedural history of this case can be found in *North Spaulding I*. In that order, we affirmed the trial court's dismissal of the Cavanaughs' counterclaim against North Spaulding and the Cavanaughs' third-party complaint against Westward. Those issues were before us on interlocutory appeal based on the trial court's finding pursuant to Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016). While *North Spaulding I* was pending in this court, the matter proceeded to a bench trial on North Spaulding's forcible entry and detainer complaint. Here, we recite only those facts relevant to the issues before us.

¶ 4        On August 1, 2013, North Spaulding filed a verified complaint against the Cavanaughs, alleging that they had "refused and failed" to pay their monthly condominium association assessments since September 1, 2012. North Spaulding alleged that on December 5, 2012, it sent a notice of nonpayment and a demand for possession (hereinafter Notice and Demand) to the Cavanaughs' condominium unit, that the Cavanaughs were delinquent, and asserted that North Spaulding was entitled to possession of the condominium unit and a judgment for unpaid and accrued common expenses along with late fees, interest, and attorney fees.

¶ 5        The Cavanaughs answered and filed an amended counterclaim against North Spaulding and an amended third-party complaint against Westward. They also asserted three affirmative defenses: waiver, "improper motive," and "insufficient notice." The trial court granted motions to dismiss the amended counterclaim against North Spaulding and amended third-party complaint against Westward, which we affirmed in *North Spaulding I*.

¶ 6        On December 22, 2015, the matter proceeded to a bench trial. North Spaulding called Daniel O'Connor, a Westward employee and the property manager for the condominium

building. He testified that North Spaulding was a not-for-profit condominium association organized under the Condominium Property Act (765 ILCS 605/1 *et seq.* (West 2014)) and governed by the condominium association's declaration. The declaration provides that each unit owner is responsible for paying assessments in equal monthly installments. The declaration also provides that North Spaulding is entitled to take possession of a unit in the event of default and that the assessments, interest, costs, and attorney fees will become the unit owner's obligation.

¶ 7        O'Connor testified that he was familiar with collection letters sent by North Spaulding. He testified that they were stored on a server, that the letters could be accessed through a program called SmartSearch, and that he was familiar with the storage and retrieval methods used by Westward. He indentified the December 5, 2012, Notice and Demand as a "record made by a person with knowledge of or made from information transmitted by a person with knowledge of the acts and events appearing on it," that it was made at or near the time of the acts and events appearing on it, that it was the regular practice of Westward as agent for North Spaulding to make such records, that it was a record kept in the course of regularly conducted business, and that the copy provided to him was a true and correct copy of the notice sent by Westward. He described how the records were stored and accessed and that a Westward employee creates notices from the information gathered from SmartSearch and sends out the notices by certified mail to the unit owner. The Cavanaughs repeatedly objected to O'Connor's foundation testimony and objected to the Notice and Demand being admitted into evidence because of a lack of foundation, the Notice and Demand was hearsay, and the Notice and Demand "has not been signed by the witness. It was signed by a third party." The trial court overruled the objections and admitted the Notice and Demand into evidence. O'Connor testified that it was the corporate procedure of Westward to send a Notice and Demand for possession to all known addresses for a unit owner. The Notice and Demand sent to the Cavanaughs stated that the unpaid assessments and accrued fees and fines totaled $1074.56.

¶ 8        O'Connor identified Westward's ledger as a "record made by a person with knowledge of or made from information transmitted by a person with knowledge of the [acts] and events appearing on it," that it was made or updated at or near the time of the acts and events appearing on it, that it was the regular practice of Westward as agent for North Spaulding to make such records, and that it was a record kept in the course of regularly conducted business. He testified that Westward stores ledger information in a computer program called Buildium, which allows for records to be accessed in a variety of ways. Over the Cavanaughs' foundational objection, the trial court admitted the ledger into evidence, which reflected a total unpaid balance of $3204.26.

¶ 9        On cross-examination, O'Connor stated that he began working for Westward in October 2013. He admitted that he was not employed by Westward at the time the Notice and Demand was sent. During cross-examination, the Cavanaughs' counsel sought to question O'Connor regarding whether he attended any condominium board meetings, whether he was familiar with any notices of such meetings, various entries on the ledger, and whether unit repairs were charged to the Cavanaughs. North Spaulding objected to each line of questioning without stating a basis for the objection, and the trial court sustained the objections without asking for a basis for the objections.

¶ 10       After North Spaulding rested its case in chief, the Cavanaughs presented a written "Motion to Find for Defendants at the Close of Plaintiff's Evidence" pursuant to section 2-1110 of the

Code (735 ILCS 5/2-1110 (West 2014)). They asserted for the first time that a *prima facie* case for forcible entry and detainer includes proving that a condominium board properly noticed a meeting open to unit owners and voted on whether to initiate litigation against a unit owner. In support, the Cavanaughs cited section 18(a)(9) of the Condominium Property Act (765 ILCS 605/18(a)(9) (West 2014)) and *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2014 IL App (1st) 111290. The Cavanaughs argued that North Spaulding failed to present any evidence that the unit owners were properly notified of a meeting or that a vote was taken authorizing the forcible entry and detainer case against the Cavanaughs. After argument, the trial court denied the motion.

¶ 11     The Cavanaughs waived their case in chief and rested. After closing arguments, the trial court found in favor of North Spaulding, entering a judgment for possession and a money judgment in the amount of $3204.26, plus $926.26 in costs.

¶ 12     North Spaulding then filed a verified petition seeking $22,493.10 in attorney fees. The fee petition was supported by an affidavit and supporting invoices. The Cavanaughs responded that the fees were excessive, that many of the charges were related to defending the Cavanaughs' counterclaim and third-party complaint, that certain fees were unsupported, and that the hourly rates charged were too high. On February 8, 2016, after a hearing, the trial court granted the fee petition, awarding North Spaulding $23,177.50 in attorney fees.

¶ 13     On January 21, 2016, the Cavanaughs filed a combined motion to reconsider the denial of their section 2-1110 motion for judgment and a motion for a new trial. They argued that the trial court misapplied the law because North Spaulding presented no evidence that it gave proper notice of an association board meeting or that the association board voted to initiate the forcible action. In their motion for a new trial, the Cavanaughs argued that the trial court sustained objections when North Spaulding's counsel gave no basis for the objection. They argued that O'Connor did not lay a proper foundation for the Notice and Demand or the ledger. The Cavanaughs' motion for a new trial cited no case law.

¶ 14     On March 8, 2016, the trial court denied the Cavanaughs' motion to reconsider and for a new trial. The Cavanaughs timely filed their notice of appeal on March 28, 2016, identifying the orders subject to their appeal as the December 22, 2015, judgment order, the February 8, 2016, order granting North Spaulding's attorney fee petition, and the March 8, 2016, order denying their motion to reconsider and for a new trial.

¶ 15                                    ANALYSIS

¶ 16     At the outset, we note that the Cavanaughs' statement of facts does not comply with Illinois Supreme Court Rule 341(h)(6) (eff. Jan. 1, 2016). They repeatedly interject argument into their statement of facts, and on several occasions, include citations to the record that do not support the purported "fact." For example, the Cavanaughs assert that they "have not resided in the Unit since prior to 2012, of which [North Spaulding] was aware." To support this assertion, they cite to the factual allegations of their own counterclaim. But in that pleading, the Cavanaughs never alleged that they resided somewhere other than the condominium unit in 2012. And while they *alleged* that North Spaulding "knew" that they did not reside at the condominium unit, the Cavanaughs never established any *evidence* that would show this to be true.

¶ 17     We also observe that the Cavanaughs regularly fail to cite to the record in support of their argument, in violation of Illinois Supreme Court Rule 341(h)(7) (eff. Jan. 1, 2016). These

violations are not severe enough to warrant striking their statement of facts, their brief, or dismissing their appeal, however we remind them that we have the discretion to do so. Because we have the benefit of our decision in *North Spaulding I*, as well as the trial transcript and the record on appeal, we will proceed to address the merits of their arguments.

¶ 18 On appeal, the Cavanaughs raise three arguments. First, they argue that the trial court erred in denying their motion for a judgment in their favor at the close of North Spaulding's case, and in denying their subsequent motion to reconsider. Next, they argue that the trial court abused its discretion by denying their motion for a new trial. Finally, they argue that the trial court abused its discretion by granting North Spaulding's petition for attorney fees.

¶ 19 First, we address the denial of the Cavanaughs' motion for a judgment in their favor at the close of North Spaulding's case in chief. The Cavanaughs argue that to prove a *prima facie* case for recovery of unpaid assessments and for possession under the Forcible Entry and Detainer Act, North Spaulding was required to prove: "(a) first, that a meeting was held to consider whether or not to institute collection proceedings against [the Cavanaughs]; (b) that a vote was taken during an open portion of that meeting by [North Spaulding] to institute litigation; and (c) that North Spaulding gave proper notice of such meeting where collection proceedings were discussed and/or voted on to [the Cavanaughs] within forty-eight hours before the meeting convened." The Cavanaughs argue that under section 18(a)(9) of the Condominium Property Act, all meetings of the board of managers for a condominium association must be open to any unit owner with proper notice, and that all votes must be made at an open meeting. They also argue that in *Palm*, 2014 IL App (1st) 111290, ¶¶ 51-59, we held that in order to pursue litigation, a condominium association must show that it held a meeting, voted, and gave proper notice to unit owners.

¶ 20 The trial court must engage in a two-phase analysis when ruling on a motion made pursuant to section 2-1110 of the Code (735 ILCS 5/2-1110 (West 2014)). The standard of review depends, in part, on the substance of the motion and the trial court's ruling. First, the trial court considers whether the plaintiff has produced some evidence in support of each element of their *prima facie* case. *Barnes v. Michalski*, 399 Ill. App. 3d 254, 263 (2010). A trial court's ruling on this first phase requires making a determination as a matter of law, which we review *de novo*. *Id.* at 263-64. If the trial court finds that the plaintiff has presented some evidence on each element, the trial court must then weigh the evidence to determine if any element of the *prima facie* case has been negated. *Id.* We review these determinations under the manifest weight of the evidence standard. *Id.* at 264. Here, the Cavanaughs did not argue the sufficiency of North Spaulding's case, but instead argued that North Spaulding's claim failed as a matter of law. As such, we review the denial of Cavanaughs' motion for judgment at the close of North Spaulding's case *de novo*.

¶ 21 The Condominium Property Act (765 ILCS 605/1 *et seq.* (West 2014)) and the Forcible Entry and Detainer Act (735 ILCS 5/9-101 *et seq.* (West 2014)) set forth the procedures available to a condominium association for recovering unpaid assessments. Section 18(o) of the Condominium Property Act requires that a condominium association's bylaws provide that "the association shall have no authority to forbear the payment of assessments by any unit owner." 765 ILCS 605/18(o) (West 2014). Furthermore, the board of managers "shall exercise the care required of a fiduciary of the unit owners" in carrying out its powers and duties, including the collection of assessments and the imposition of charges for late payment of a unit

owner's proportionate share of the common expenses. 765 ILCS 605/18.4(d), (*l*) (West 2014). Section 9.2(a) of the Condominium Property Act provides:

> "In the event of any default by any unit owner *** the board of managers *** shall have such rights and remedies as provided in the [Condominium Property] Act *** including the right to maintain an action for possession against such defaulting unit owner *** for the benefit of all the other unit owners in the manner prescribed by Article IX of the Code of Civil Procedure [735 ILCS 5/9-101]." 765 ILCS 605/9.2(a) (West 2014); see also *Knolls Condominium Ass'n v. Harms*, 202 Ill. 2d 450, 456 (2002).

¶ 22　　A "prime purpose of the Forcible Entry and Detainer Act *** is to provide a speedy remedy to give possession to those entitled to it." *Sawyier v. Young*, 198 Ill. App. 3d 1047, 1052 (1990); see also *Wells Fargo Bank, N.A. v. Watson*, 2012 IL App (3d) 110930, ¶ 14. Section 9-102(a)(7) of the Forcible Entry and Detainer Act provides that a condominium association is entitled to possession of a condominium unit when a unit owner fails or refuses to pay their proportionate share of common expenses, the condominium association serves a demand in compliance with section 9-104.1 of the Forcible Entry and Detainer Act, and the unit owner fails to pay the amount claimed within the time proscribed. 735 ILCS 5/9-102(a)(7) (West 2014). Section 9-104.1 requires the condominium association to provide notice that the unit owner has at least 30 days to satisfy the demand and set forth the amounts claimed and when those amounts were originally due along with late charges, interest, and attorney fees. 735 ILCS 5/9-104.1(a) (West 2014). The notice must include specific language that only full payment will be accepted to invalidate the demand unless otherwise agreed to in writing. 735 ILCS 5/9-104.1(b) (West 2014). The demand must be served in accord with section 9-104.1(c) (735 ILCS 5/9-104.1(c) (West 2014)).

¶ 23　　We find that the trial court properly denied the Cavanaughs' section 2-1110 motion for judgment because North Spaulding was not required, as part of its *prima facie* case for possession and recovery of unpaid assessments, to prove that it properly noticed and conducted an association board meeting where a vote was taken to authorize the forcible action. The only case to which the Cavanaughs cite in support of their argument is our decision in *Palm*. There, a unit owner sought injunctive relief against the condominium association for allegedly violating the Condominium Property Act by conducting board business in "working sessions" that were not open to unit owners. *Palm*, 2014 IL App (1st) 111290, ¶ 19. The trial court granted summary judgment in favor of the plaintiff, finding that the defendant condominium association violated its "declaration and the Not for Profit Act by undertaking to defend the instant case without taking a vote in an open meeting as to whether to pursue the litigation." *Id.* ¶ 26. The trial court enjoined the board from "addressing, acting on, voting on, and making decisions on affairs" except in properly noticed meetings open to unit owners. *Id.* ¶ 28. On appeal, we found that the "working sessions" constituted "conducting board business" as used in the Condominium Property Act's definition of board "meeting" in section 2(w), and therefore needed to be done in open meetings. *Id.* ¶¶ 54-55. We went on to state that the "question of whether to assert or defend a lawsuit and, necessarily, whether to expend association funds and resources on such litigation is clearly a question involving the business of the association," and section 18(a)(9) of the Condominium Property Act "specifically provides that the board must vote on any litigation matter at meeting [*sic*] open to all unit owners." *Id.* ¶ 87.

¶ 24    The Cavanaughs' reliance on *Palm* is misplaced, and no court has applied *Palm* in the manner urged by the Cavanaughs. *Palm* was not a forcible entry and detainer case and did not directly analyze the issue presented here: whether a condominium association, as part of its *prima facie* case in a forcible entry and detainer action, must prove that it properly noticed a board meeting, open to unit owners, at which a vote was taken on the issue of whether to initiate an action for possession and to recover unpaid assessments. Nor did *Palm* address whether a unit owner may raise the failure to hold a meeting and vote to file a forcible entry and detainer lawsuit as a defense to a forcible entry and detainer action. In their appellant's brief, the Cavanaughs cite no other case law and develop no further argument to support their position that an essential element of a forcible entry and detainer case is proof that the action was authorized by a board vote taken at a properly noticed meeting open to all unit owners.

¶ 25    The Cavanaughs' position is also at odds with the Condominium Property Act and the Forcible Entry and Detainer Act. See *Knolls Condominium Ass'n*, 202 Ill. 2d at 457-58 (noting that section 9.2 of the Forcible Entry and Detainer Act "was adopted to provide a constitutionally permissible, quick method for collection of assessment arrearages" (internal quotation marks omitted)). Neither statute requires that a condominium association prove that it voted to initiate collection proceedings at a properly noticed meeting open to unit owners as an element of its forcible entry and detainer claim. The legislature amended both statutes to give condominium associations the right to use the Forcible Entry and Detainer Act to collect past due assessments (see *id.*) and, in doing so, did not include a requirement that the condominium association prove that a vote was held at a properly noticed meeting open to unit owners. In short, the issues in a forcible entry and detainer action brought by a condominium association are whether assessments are unpaid, how much is due, and whether reasonable attorney fees should be awarded to the association if successful. The legislature could have, but clearly did not, made the process of collecting necessary assessments more complicated by requiring formal proof of a collection duty in a forcible action. The Condominium Property Act requires the association board to collect unpaid assessments and gives the board no discretion is relieving a unit owner of their obligation to pay those assessments. This is a common sense provision that protects unit owners from shouldering costs that should be borne by a delinquent unit owner. In most instances, condominiums consist of a relatively small number of unit owners who are not professional building managers and are typically not assisted with sophisticated legal advice. The legislature clearly did not intend on providing a complicated or burdensome process for recovery of association expenses.

¶ 26    In sum, neither the Condominium Property Act nor the Forcible Entry and Detainer Act required North Spaulding to prove as an element of recovery that the litigation was authorized by a board vote at a properly noticed meeting open to all unit owners, and based on the record before the trial court and on appeal, we will not extend *Palm* to create any such requirement. Here, North Spaulding presented evidence at trial that, as a condominium association, it was entitled to possession of Cavanaughs' unit for unpaid assessments under section 9-102(a)(7) of the Forcible Entry and Detainer Act (735 ILCS 5/9-102(a)(7) (West 2014)). North Spaulding presented evidence that the Cavanaughs had not paid their assessments since September 1, 2012, that the Notice and Demand was given and served in accord with sections 9-102 and 9-104.1 on December 5, 2012, and that the Cavanaughs owed $3204.26. At the close of North Spaulding's case, the Cavanaughs, for the first time in the circuit court, interjected the issue of whether the association board voted to bring a forcible action in their section 2-1110 motion

for judgment and then failed to develop a coherent argument that North Spaulding was required to prove that a vote had been taken as part of its *prima facie* case. They advance no additional argument on appeal. The Cavanaughs' motion for judgment at the close of North Spaulding's case in chief was properly denied.

¶ 27    Next, the Cavanaughs argue that the trial court abused its discretion by denying their motion for a new trial. They argue that the trial court improperly sustained North Spaulding's objections during the Cavanaughs' cross-examination of O'Connor when North Spaulding offered no basis for its objections. The Cavanaughs further claim that the trial court improperly admitted the Notice and Demand and North Spaulding's ledger into evidence without an adequate foundation. We address these arguments in turn.

¶ 28    First, the Cavanaughs argue that the trial court should have sought a basis for North Spaulding's objections during the cross-examination of O'Connor. During trial, the Cavanaughs attempted to ask O'Connor questions regarding the requirement that North Spaulding send notices of condominium board meetings and whether any such notices were sent. North Spaulding objected without stating a basis for the objection, and the trial court sustained the objections. The Cavanaughs argue that the basis for the objections is not clear from the context of the proceedings and that these questions were "clearly relevant and germane to the proceedings, as [they establish] that [O'Connor] could not testify as to whether [North Spaulding] had the authority to act."

¶ 29    North Spaulding argues the Cavanaughs have forfeited this argument by failing to cite any authority in support of its contention that the basis of North Spaulding's objections were not apparent from the context of the trial.[1] They argue that the objections were clearly related to "germaneness" since the issue of whether the condominium board properly noticed and held a meeting at which it voted to initiate the forcible action is not germane to the issue of possession.

¶ 30    We review a trial court's ruling on a motion for a new trial for an abuse of discretion. *Snelson v. Kamm*, 204 Ill. 2d 1, 36 (2003). Also, a trial court's evidentiary rulings will not be overturned absent a clear abuse of discretion. *In re Leona W.*, 228 Ill. 2d 439, 460 (2008). In order to warrant reversal of the trial court's evidentiary rulings, the error must have been substantially prejudicial and affected the outcome of the case. *Id.* A trial court abuses its discretion only if it exceeds the bounds of reason and ignores recognized principles of law or if no reasonable person would take the position adopted by the court. *Alm v. Loyola University Medical Center*, 373 Ill. App. 3d 1, 4 (2007).

¶ 31    Although the parties reference Illinois Rule of Evidence 103 (eff. Oct. 15, 2015),[2] they fail to discuss the more applicable rules of evidence. While North Spaulding refers to

---

[1]We note that the Cavanaughs' sole citation was to our unpublished order in *People v. Varela*, 2015 IL App (2d) 121360-U, which was entered pursuant to Rule 23 and which may not be cited as authority except under limited circumstances. Those circumstances are not present here, and we therefore disregard the citation.

[2]Illinois Rule of Evidence 103 states:

"(a) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

"germaneness" in its appellee's brief as the basis for its trial court objections, having reviewed the trial transcript, it is clear that North Spaulding's objections were rooted in relevance. See Ill. R. Evid. 401 (eff. Jan. 1, 2011) (" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Irrelevant evidence is not admissible. Ill. R. Evid. 402 (eff. Jan. 1, 2011). As discussed above, the first time that the Cavanaughs asserted their argument regarding the need for a properly-noticed board meeting and vote was in their motion for judgment at the close of North Spaulding's case in chief. At trial, O'Connor was called as a witness to establish that North Spaulding was a condominium association, that it complied with its notice obligations under the Forcible Entry and Detainer Act by sending the Notice and Demand, and to establish the amount owed by the Cavanaughs. The trial court acted within its discretion by sustaining North Spaulding's objections to questions about board meetings and votes without seeking a basis for those objections because, in context, they were not relevant to any issue being tried, specifically whether North Spaulding had established a right to a judgment for possession and unpaid assessments. Therefore, the trial court did not abuse its discretion in denying that portion of the Cavanaughs' motion for a new trial.

¶ 32        Next, the Cavanaughs raise a similar argument with respect to the trial court sustaining objections without seeking a basis for the objection where the Cavanaughs sought to question O'Connor regarding certain entries in North Spaulding's ledger. The Cavanaughs again claim that the trial court "excluded testimony that was highly relevant to the proceeding without any basis for doing so." The Cavanaughs claim that this "affected the outcome of the trial, and thus, a new trial is appropriate." The Cavanaughs' appellant's brief fails to identify the entries they wanted to explore, and they made no offer of proof in this regard.

¶ 33        The Cavanaughs have forfeited this point by failing to develop any meaningful argument in support. Ill. S. Ct. R. 341(h)(7) (eff. Jan. 1, 2016); see also *Housing Authority v. Lyles*, 395 Ill. App. 3d 1036, 1040 (2009) (finding that failure to properly develop an argument does "not merit consideration on appeal and may be rejected for that reason alone"). They made no offer of proof that might establish the relevance of their questions and, on appeal, fail to offer any explanation as to the significance the entries in the ledger about which they sought to question O'Connor. The Cavanaughs argue that the ledger formed North Spaulding's basis for damages, but they fail to develop any argument as to how any of the ledger entries were improperly admitted into evidence for the purpose of computing the total amount of North Spaulding's damages. They also fail to direct our attention to the ledger entries about which they wanted to question O'Connor. There was no suggestion that any assessments were paid or incorrectly credited to the Cavanaughs. There was no suggestion by way of competent evidence or an offer of proof that the claimed amount due was excessive. They have therefore forfeited their argument that the trial court abused its discretion in denying their motion for a

---

(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

(2) Offer of Proof. In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked." Ill. R. Evid. 103(a)(1)-(2) (eff. Oct. 15, 2015).

new trial on the basis of having sustained objections to questions about the ledger without a basis for those objections. *Lyles*, 395 Ill. App. 3d at 1040.

¶ 34    Next, the Cavanaughs argue that the trial court abused its discretion in denying their motion for a new trial because the trial court admitted the Notice and Demand and ledger into evidence without proper foundations. They argue that O'Connor, who was not employed by Westward until October 2013, could not lay the foundation for a document purportedly created in 2012, since he is unable to testify that the record was made in the ordinary course of business, or that it was made at or near the time of the event or occurrence.

¶ 35    The Cavanaughs fail to cite to the record on appeal in support of their argument and largely fail to cite any case law in support of their argument. Most glaringly, they fail to even mention Illinois Supreme Court Rule 236(a) (eff. Aug. 1, 1992) or Illinois Rule of Evidence 803(6) (eff. Apr. 26, 2012). These violations are grounds for forfeiture. See *Lyles*, 395 Ill. App. 3d at 1040. However, we understand the Cavanaughs' argument and find that North Spaulding laid a sufficient foundation pursuant to Rule 236(a) and Illinois Rule of Evidence 803(6).

¶ 36    Rule 236(a) provides that:

"Any writing or record, whether in the form of any entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility. The term 'business,' as used in this rule, includes business, profession, occupation, and calling of every kind." Ill. S. Ct. R. 236(a) (eff. Aug. 1, 1992).

¶ 37    The Cavanaughs' argument regarding O'Connor not being employed by Westward at the time the Notice and Demand was made and sent does not affect its admissibility but rather goes the weight to be given it by the trier of fact. Ill. S. Ct. R. 236(a) (eff. Aug. 1, 1992). Here, O'Connor identified the Notice and Demand sent to the Cavanaughs. He testified that it was the regular practice of Westward, as agent of North Spaulding, to prepare Notice and Demand letters kept in the course of Westward's regularly conducted business activity made by a person with knowledge of or made from information given by a person with knowledge of the acts described therein, that the Notice and Demand letters are stored on a computer server, that he frequently works with such records, and that he was familiar with Westward's storage and retrieval methods for documents such as the Notice and Demand. He testified that the Notice and Demand letter dated December 5, 2012, was a true and accurate copy of the one sent to the Cavanaughs, which was created at or near the time of the events described therein, and that it was Westward's procedure to send such notices to all known addresses of the unit owner. He identified the Notice and Demand as a true and accurate copy of the one sent to the Cavanaughs. This testimony, coupled with the Cavanaughs' admission that that the document was sent to their unit, clearly established that North Spaulding laid an adequate foundation under Rule 236(a), and the trial court did not abuse its discretion in admitting the Notice and Demand.

¶ 38    O'Connor also identified Westward's ledger for the Cavanaughs' unit. He testified that it was made by a person with knowledge or from information transmitted by a person with

knowledge of the events, that it was made and updated at or the near the time of the events appearing in it, that it was Westward's regular practice to make such records, and that they were kept in the ordinary course of business. He testified that he was familiar with Westward's storage and retrieval procedures and the copy of the ledger he was shown was a true and accurate copy of the ledger for the Cavanaughs' account. Again, this is an adequate foundation under Rule 236(a), and the trial court did not abuse its discretion in admitting the ledger into evidence.

¶ 39    In sum, the trial court did not abuse its discretion in denying the Cavanaughs' motion for new trial where the trial court did not abuse its discretion in admitting the Notice and Demand or the account ledger into evidence.

¶ 40    Finally, the Cavanaughs argue that the trial court abused its discretion in granting North Spaulding's petition for attorney fees. They argue that the fees requested by North Spaulding are "excessive and improper," that the fees are not supported by the "documents" tendered to the trial court, and that North Spaulding improperly sought over $10,000 in fees in connection with the Cavanaughs' counterclaim and third-party complaint.[3] Plaintiff's argument cites virtually no authority in support of the claimed error.

¶ 41    Section 9.2(b) of the Condominium Property Act states that "[a]ny attorneys' fees incurred by [an] Association arising out of default by an unit owner *** shall be added to, and deemed a part of, his respective share of the common expense." 765 ILCS 605/9.2(b) (West 2014). Section 9-111 of the Forcible Entry and Detainer Act provides:

> "[W]hen [an] action is based upon the failure of an owner of a unit therein to pay when due his or her proportionate share of the common expenses of the property, or of any other expenses lawfully agreed upon or the amount of any unpaid fine, and if the court finds that the expenses or fines are due to the plaintiff, the plaintiff shall be entitled to the possession of the whole of the premises claimed, and judgment in favor of the plaintiff shall be entered for the possession thereof and for the amount found due by the court including interest and late charges, if any, together with reasonable attorney's fees, if any, and for the plaintiff's costs. The awarding of reasonable attorney's fees shall be pursuant to the standards set forth in subsection (b) of this Section 9-111." 735 ILCS 5/9-111(a) (West 2014).

Section 9-111(b) requires the trial court, when determining reasonable attorney fees, to consider: "(i) the time expended by the attorney; (ii) the reasonableness of the hourly rate for the work performed; (iii) the reasonableness of the amount of time expended for the work performed; and (iv) the amount in controversy and the nature of the action." 735 ILCS 5/9-111(b) (West 2014).

¶ 42    We begin by noting that the Cavanaughs assert, without citation to case law and without developing any legal argument, that the trial court abused its discretion by awarding North Spaulding attorney fees incurred in defending the Cavanaughs' counterclaims. A plain reading of section 9.2 of the Condominium Property Act shows that "*[a]ny* attorneys' fees incurred by [an] Association *arising out of a default* by [a] unit owner" become part of unit owners' respective share of the common expense. (Emphases added.) 765 ILCS 605/9.2(b) (West

_____

[3]North Spaulding and Westward were represented by the same attorneys in the trial court, and in this court, both in this case and in case No. 1-15-3387, although Westward is not actually a party to this appeal.

- 11 -

2014). The statute does not expressly exclude fees incurred as a result of defending against a unit owners' counterclaims, and we see no reason why the remaining unit owners should bear the cost of defending a counterclaim raised in an action brought of their behalf against a unit owner that purportedly is not meeting its obligation imposed by the Declaration. Similarly, section 9-111 of the Forcible Entry and Detainer Act provides that the condominium association may recover reasonable attorney fees. 735 ILCS 5/9-111(a) (West 2014). Again, the recoverable fees are not expressly limited to those incurred prosecuting the forcible action, but includes fees incurred by an association based on a unit owner's failure to pay. The Cavanaughs have failed to establish that the fees incurred by North Spaulding in defense of the Cavanaughs' counterclaim are not recoverable. We find that, under the plain and ordinary language of the applicable statutes, North Spaulding may recover reasonable attorney fees for defending against the Cavanaughs' counterclaim. The trial court did not abuse its discretion in awarding North Spaulding attorney fees in connection with the Cavanaughs' counterclaim.

¶ 43      The Cavanaughs also argue that North Spaulding's fees were "excessive" since North Spaulding incurred almost $3000 in legal fees before obtaining service of process on the Cavanaughs and expended significant time responding to the Cavanaughs' emergency motion for substitution of judge as a matter of right. The legislature is aware of the various provisions available to defendants in civil litigation, and it chose not to afford any limitation other than "reasonableness" on a condominium association's ability to recover attorney fees. The Cavanaughs present virtually no argument demonstrating how the trial court abused its discretion, and merely urge us to agree that the fees were excessive. Whether the fees were excessive in light of the nature of the work performed is a matter within the trial court's discretion. See 735 ILCS 5/9-111(b) (West 2014). We have reviewed the fee petition filed with the trial court, which was supported by detailed time records, and we are satisfied the fees sought are reasonable, particularly given the nature of the defense advanced by the Cavanaughs. Furthermore, the record on appeal does not include a transcript of the hearing on North Spaulding's fee petition, nor have we been provided with a bystander's report or any other report of the proceedings that might shed light on what factors were considered by the trial court. Any doubts that arise from the incompleteness of the record on appeal are resolved against the appellant, and the absence of the transcript of the hearing on the petition for attorney fees leaves us with no basis for holding that the trial court abused its discretion in determining the reasonableness of those fees. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984).

¶ 44      The Cavanaughs raise two final arguments. First, they contend that the trial court abused its discretion in granting North Spaulding all of the attorney fees it sought where part of those fees appear to have been incurred defending Westward, the third-party defendant. Second, the Cavanaughs argue that North Spaulding was granted attorney fees in the amount of $23,117.50, when the fee petition sought $22,493.10,[4] and that the trial court awarded $926.23 in costs, when the documentation attached to the fee petition, according to the Cavanaughs, only amounted to $813.83.[5]

---

[4]The Cavanaughs allege that the invoices attached to the fee petition only amounted to $27,007.70.

[5]We are skeptical of the Cavanaughs' claim on this point, as they appear to have overlooked $120 in charges clearly set forth in the invoices. The Cavanaughs' brief contains a table of charges purportedly based on the invoices attached to North Spaulding's fee petition. The Cavanaughs' table

¶ 45     We agree that North Spaulding did not establish that it was entitled to recover attorney fees and costs incurred on behalf of Westward. The plain language of the Condominium Property Act and the Forcible Entry and Detainer Act permit a condominium association to recover attorney fees and costs "arising out of" and "based on" a unit owners' failure to pay, but North Spaulding points to no statutory provision that expressly permits the condominium association to recover fees and costs incurred by a third-party defendant. Neither the Condominium Property Act nor the Forcible Entry and Detainer Act contains a "prevailing party" attorney fees and costs provision. It is clear from reviewing the invoices attached to the fee petition that part of the fees recovered by North Spaulding relate to attorney fees and costs incurred by its management company Westward.[6]

¶ 46     If a trial court's decision rests on an error of law, then it is clear that an abuse of discretion has occurred, as it is always an abuse of discretion to base a decision on an incorrect view of the law. *Silverberg v. Haji*, 2015 IL App (1st) 141321, ¶ 34 (citing *People v. Porter-Boens*, 2013 IL App (1st) 111074, ¶ 10). Although we lack a report of proceedings and have an inadequate basis to determine whether the trial court abused its discretion in determining the reasonableness of the requested fees, we are satisfied that North Spaulding's petition for attorney fees and costs clearly includes fees and costs incurred by the third-party defendant Westward, which North Spaulding has not established are recoverable.

¶ 47     We therefore affirm the award of attorney fees to North Spaulding based on the hourly rate and time expended on behalf of North Spaulding as presented to and approved by the trial court. However, we vacate the trial court's award of $23,117.50 in attorney fees in favor of North Spaulding to the extent that this award includes attorney fees incurred by of Westward in its defense of the third-party complaint filed against it. We vacate the trial court's award of $926.23 in costs in favor of North Spaulding and remand for a hearing on North Spaulding's petition for attorney fees. On remand, the trial court should exclude attorney fees and costs attributable to Westward's defense of the third-party complaint, unless the association can cite to other statutory authority, and ensure that the attorney fees and costs awarded to North Spaulding are properly supported.

¶ 48                                    CONCLUSION

¶ 49     For the foregoing reasons, we affirm the trial court's order denying the Cavanaughs' section 2-1110 motion for judgment and denying their motion to reconsider, we affirm the trial court's order denying the Cavanaughs' motion for a new trial, we affirm the award of attorney fees and the rate and hours expended on behalf of North Spaulding, we vacate the trial court's order granting attorney fees in favor of North Spaulding to the extent the award includes attorney fees incurred by Westward in its defense of the third-party complaint, and remand for further proceedings consistent with this order.

---

includes a line item for "Sheriff Fee for Posting" in the amount of $60. According to North Spaulding's invoices, there were three charges for Sheriff Fee for Posting, at the rate of $60 each.

[6]For example, North Spaulding filed a motion to dismiss the Cavanaughs' original and first amended counterclaim, while Westward filed a motion to dismiss the original and first amended third-party complaint. It is also clear that some of the costs itemized include the appearance fee for Westward, and costs associated with filing documents on behalf of Westward.

¶ 50          Affirmed in part; vacated in part; remanded with instructions.