**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2024 IL App (3d) 230171-U

Order filed May 30, 2024

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2024

| | | |
|---|---|---|
| THE CLAYMOOR CONDOMINIUM ASSOCIATION, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, DuPage County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0171 Circuit No. 20CH410 |
| KATARZYNA MAJEWSKA, | ) ) ) | The Honorable Anne Therieau Hayes |
| Defendant-Appellant. | ) ) | Judge, Presiding. |

PRESIDING JUSTICE McDADE delivered the judgment of the court.
Justices Brennan and Albrecht concurred in the judgment.

**ORDER**

¶ 1    *Held*:   (1) Because the Claymoor Condominium Association provided adequate notice to the defendant and ratified its attempts to remedy her violation of the condominium's declaration, the trial court properly granted summary judgment for the Association; and (2) under the totality of the evidence, the trial court's grant of the Association's fee petition was not an abuse of discretion.

¶ 2    In 2020, the Claymoor Condominium Association filed a complaint against Katarzyna Majewska, who owned a unit within the condominium complex. The complaint alleged that she violated the Association rules by invading the building's common elements when she raised the

ceiling height in her unit without seeking prior approval from the Association's board of directors. The focus of the parties' dispute became whether approval was necessary when the area at issue was a "limited common element."

¶ 3 The parties filed cross-motions for summary judgment, with the trial court granting the Association's motion and denying Majewska's motion. As permitted by the condominium's declaration, the Association filed a petition for fees and costs and was awarded over $96,000. Majewska appeals both the entry of the summary judgment order and the fee award. We affirm.

¶ 4 I. BACKGROUND

¶ 5 After Majewska purchased a unit in the Association in January 2020, she began to renovate by replacing the windows and raising the ceiling height in one room by approximately 26 inches. She did not request permission from the Association's Board of Directors for the change in the height of the ceiling. After learning of the ceiling renovation, the Board determined that the change violated the applicable rules and sent a letter to Majewska notifying her of the violation.

¶ 6 When Majewska failed to remedy the violation, the Association filed a complaint in the Du Page County circuit court in May 2020, seeking (1) a permanent injunction requiring Majewska to return her ceiling and the common area above it to their original conditions and (2) a declaratory judgment that Majewska "is responsible for obtaining board approval prior to performing or otherwise making an addition, alteration or improvement to the Association's Common Elements, as required by the Declaration and cited by the Association" and "is responsible for reimbursing the Association for all attorney's fees and costs incurred as a result of enforcing the terms of its Declaration." The Association filed a motion for summary judgment in September, but no hearing was held on that motion.

2

¶ 7        In November 2021, Majewska filed a motion for partial summary judgment seeking dismissal of the Association's complaint with prejudice "based on the failures of the Plaintiff to follow mandatory statutory procedures" for notice and due process. After a hearing, Judge Paul Fullerton denied Majewska's motion, finding "that sufficient notice under the Declaration and the Illinois Condominium Property Act and an opportunity to be heard were given to Defendant on March 30, 2020, by the Plaintiff." In March 2022, Majewska filed a counterclaim, asserting the Association's breach of contract by failing to follow the mandated procedures.

¶ 8        On October 14, 2022, the Association and Majewska filed cross-motions for summary judgment. After a hearing, the trial court granted the Association's motion and denied Majewska's motion. The trial court denied Majewska's motion to reconsider because "the movant has failed to demonstrate newly discovered evidence, changes in the law, or an error in the Court's application of the facts to the law in this case." After obtaining leave of the court, the Association filed a petition seeking $96,155.08 in attorney fees and other costs in January 2023, which was granted after a hearing. Majewska appeals from the grant of the Association's October 2022 summary judgment motion and petition for fees and costs.

¶ 9        II. ANALYSIS

¶ 10        On appeal, Majewska asserts that the trial court erred by: (1) awarding summary judgment for the Association and (2) granting the Association's request for attorney fees. We address each issue and the applicable standard of review in turn.[1]

¶ 11        A. Summary Judgment

---

[1] The Association's appellate brief requests that this court disregard or strike the portions of Majewska's brief that fail to comport with the applicable Supreme Court Rules. Although we find that portions of that brief are not fully compliant with the Rules, we deny the Association's motion and will consider the brief as submitted.

¶ 12        Initially, Majewska argues that the facts refute the trial court award of summary judgment for the Association. In considering a summary judgment order, the applicable standard of review is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). An order of summary judgment may be properly entered only if no genuine issues of material fact remain, entitling the movant to judgment as a matter of law, and no reasonable person could draw a different conclusion from the undisputed facts. In reviewing a motion for summary judgment, the factual record must be liberally construed in favor of the nonmovant. *Duniver v. Clark Material Handling Co.*, 2023 IL 128141, ¶ 24.

¶ 13        Majewska notes that the parties agreed in the trial court that the work done to her ceiling involved a "limited common element." She argues that the condominium declarations make "limited common elements" and "common elements" "completely separate categories with separate rules in relation to the Plaintiff," with owners being allowed to make any changes "within the Unit *** without the prior written approval of the Board." Because, in her view, the ceiling was a "limited common element" but not a "common element," Majewska argues that she was not required to seek prior Board approval. With no need for Board approval, her ceiling renovation did not violate the declarations, entitling her to summary judgment as a matter of law.

¶ 14        The condominium declaration here is a contract between Majewska, as the owner of the unit, and the Association. *Forest Glen Community Homeowners Association v. Bishof*, 321 Ill. App. 3d 298, 303 (2001). When the declaration was originally recorded in 1966, it included a Plat of Survey showing the units, the common elements, and the balconies. The plat also established "the horizontal and vertical boundaries of the units." For units located on the third floor, such as Majewska's unit, the vertical boundaries "do not extend to the attic area above the horizontal boundaries of the unit (*i.e.*, ceilings)." In addition, the Plat expressly states that "the

'horizontal and vertical planes forming *boundaries of units coincide with* top of concrete sub-floors, *bottom of joists*, and *interior face of* perimeter masonry walls or *wooden stud walls*.' " (Emphases added.) Nothing in the Plat suggests that the space above the ceiling is within the boundary of any units. In fact, section 1(e) of the declaration specifically defines a "unit" "as the space enclosed and bounded by the horizontal and vertical planes as shown on the Plat."

¶ 15    Sections 1(f) and 1(g)  of the declaration define the building's "common "elements" "as all of the Property, except the Units" and its "limited common elements" "as those portions of the Common Elements contiguous to and serving exclusively a single or adjoining Units, including but not limited to the ceilings." Those definitions closely track the ones found in section 2 of the Illinois Condominium Property Act (765 ILCS 605/2 (West 2022)).

¶ 16    Critically, section 2(e) of the Act specifically states that "common elements" include "limited common elements." 765 ILCS 605/2(e) (West 2022) (stating " 'Common Elements' means all portions of the property except the units, including limited common elements unless otherwise specified"). Section 2(s) of the Act emphasizes the legislature's intent to create overlapping definitions of "common elements" and "limited common elements," stating " '*Limited Common Elements*' *means a portion of the common elements* so designated in the declaration as being reserved for the use of a certain unit or units to the exclusion of other units, including but not limited to balconies, terraces, patios and parking spaces or facilities." (Emphasis added.) 765 ILCS 605/2(s) (West 2022). Our case law has also recognized that a condominium's limited common elements constitute a subset of its common elements. *Lake Barrington Shore Condominium Ten Homeowners Ass'n v. May*, 196 Ill. App. 3d 280, 283 (1990) (stating "the limited common elements are a subset of the common elements"). Moreover, paragraph 17 of the declaration expressly states that "[n]o alterations of any Common Elements,

or any additions or improvements thereto, shall be made by any Unit Owner without the prior written approval of the Board." Pursuant to the clear and unambiguous provisions of both the Act and the declaration, we reject Majewska's claim that Board approval was not required because her ceiling renovation did not affect the "common elements."

¶ 17    Nonetheless, she contends that no violation occurred because her renovations did not damage any other unit, the common elements or the property, or create any danger. That contention, however, is blatantly incorrect. By raising the height of her ceiling to intrude into the common space above it, Majewska reduced the set of common elements shared by all unit owners and attempted to use it exclusively as part of her unit. Our courts have long held that converting common elements for a single condominium owner's exclusive use is improper. See *Picerno v. 1400 Museum Park Condominium Ass'n*, 2011 Ill. App. (1st) 103505, ¶ 14 (holding that it is well-settled that other owners' interests are diminished when one unit owner is given exclusive use of an area); *Carney v. Donley*, 261 Ill. App. 3d 1002, 1009-10 (1994) (holding that the erection of balcony extensions amounted to an exclusive use that diminished other unit owners' ownership interest in the common elements); *Sawko v. Dominion Plaza One Condominium Ass'n No. 1-A*, 218 Ill. App. 3d 521, 529-30 (1991) (holding that the board of directors diminished a unit owner's interest in the common elements by allowing non-exclusive parking spaces to be used exclusively by certain individuals); *Stuewe v. Lauletta*, 93 Ill. App. 3d 1029, 1031 (1981) (holding that, barring approval by all unit owners, a developer's grant to one owner of a lease with a covenant for a parking space that had been part of the common elements was improper). Majewska's arguments are contrary to both our precedents and common sense.

¶ 18    Majewska also contends that summary judgment was improper because genuine questions of material fact remain about the validity of the procedures the Association used to

6

notify her of the violation and instigate the instant litigation. Due to those procedural defects, she asserts that the Association's complaint must be dismissed.

¶ 19     Majewska first maintains that she was not given proper notice and opportunity to be heard about the alleged violation. The trial court specifically addressed that claim at least twice, first in ruling on her November 2021 motion for partial summary judgment and later in its ruling on the parties' cross-motions for summary judgment motion.

¶ 20     The record on appeal shows that the judge presiding over the hearing on Majewska's motion for partial summary judgment, Judge Paul Fullerton, found that the Association provided adequate notice, stating in his written order "that sufficient notice under the Declaration and the Illinois Condominium Property Act and an opportunity to be heard were given to Defendant on March 30, 2020, by the Plaintiff." During the hearing on that motion, the judge also stated,

> "The Court's clear. Notice was sent. And then the notice said if you would like to have a hearing, or you object to the board's position, then you have that opportunity. Contact us. We'll set that hearing, or we'll allow you to come before the board. So that's the opportunity to be heard.
>
> There is no obligation on the part of the board to summon any of the condo owners to come before them to either dispute whatever is being sent by the board or to air a grievance or their position. It just -- it doesn't work that way.
>
> So I guess the long story short is the motion for partial summary judgment is denied. There was due process here, according to the caselaw and the statute as far as notice and an opportunity to be heard. ***

7

It seems to the Court that a lot of time has been wasted with respect to this argument. There's nothing either in the declarations or in the statute that would require the board or the condominium association to do something beyond what they've done. So -- at least for the hearing point."

¶ 21 When Majewska raised the notice issue again in her motion for summary judgment, Judge Anne Hayes noted that Majewska had previously "asserted [1] that she was never given a warning or violation notice, [2] that the board never approved in an open meeting of the board to initiate this litigation and [she] never had an opportunity to discuss the issues before the board, and finally [3] [that she was] never given a right to appear before the board for any hearing." In issuing her ruling, the judge cited with approval Judge Fullerton's prior rejection of that claim and quoted from his comments during that hearing.

¶ 22 The March 30, 2020, letter sent by the Association's counsel to Majewska specifically identified the nature of the alleged violation, the section of the declaration that it violated, and the remedy requested by the Association, namely, to return the "ceiling to the previous height, and otherwise return the attic space above [the] unit to its previous condition." The letter further warned that if the problem was not timely remedied, "the Association shall proceed with all legal and equitable remedies available to it. This shall include filing a lawsuit against you to obtain a Court Order requiring you to comply with the governing documents and return the ceiling and attic to its previous condition prior to the construction and improvements within your unit." The letter also specifically gave Majewska an adequate opportunity to be heard before any action was taken against her, stating,

"[i]n the event you feel that you received this notice in error or otherwise would like to dispute the asserted violation, you may request a hearing with the Board. Such a request

8

must be provided, in writing, to our office, within fourteen (14) days of the date of this correspondence. Otherwise, you must comply with this demand and return the unit's ceiling and the Association's attic to its previous condition."

Despite receiving the letter, Majewska did not request a hearing before the Board. We conclude that both trial court judges correctly found that Majewska received sufficient notice and opportunity to be heard on the alleged violation.

¶ 23    Majewska next claims that the Association's Board of Directors was barred from ratifying its decisions to have counsel send the March 30 notice of violation and, subsequently, to pursue litigation, citing section 18(9)(A) of the Condominium Property Act (765 ILCS 605/18(9)(A) (West 2022)),  and *Lake Point Tower Condominium Ass'n v. Waller*, 2017 IL App (1st) 162072.

¶ 24    Pursuant to section 18(9)(A), the bylaws of a condominium association must provide, at a minimum,

> "that every meeting of the board of managers shall be open to any unit owner, except that the board may close any portion of a noticed meeting or meet separately from a noticed meeting to: (i) discuss litigation when an action against or on behalf of the particular association has been filed and is pending in a court or administrative tribunal, or when the board of managers finds that such an action is probable or imminent, ***, (iv) discuss violations of rules and regulations of the association, ***; that any vote on these matters shall take place at a meeting of the board of managers or portion thereof open to any unit owner." 765 ILCS 605/18(9)(A) (West 2022).

¶ 25    Majewska contends that *Lake Point* and section 18(9)(A) require the dismissal of the Association's complaint because its board did not vote at an open meeting to send the March 30

9

notification letter or to instigate litigation. That contention misreads *Lake Point*. That decision did not require a vote before the Association could file its complaint. Rather, it explained that "another panel of this court recently indicated that an association's complaint is *not required to allege* as an element of a forcible entry and detainer action that the association's *board voted at an open meeting to initiate litigation.* See *North Spaulding Condominium Ass'n v. Cavanaugh*, 2017 IL App (1st) 160870, ¶ 22." (Emphases added.) *Lake Point*, 2017 IL App (1st) 162072, ¶ 13. "Before the trial court dismissed [the action in *Lake Point*], the Board voted at an open meeting to pursue litigation against Waller. *This eliminated her basis for asserting that the Association had no authority to pursue collections litigation against her.* Additionally, Waller *** cited no case law supporting her position that the Board's vote constituted an improper attempt at ratification or that all declarations must specifically authorize a board to ratify earlier actions in order for ratification to be effective." (Emphasis added.) *Lake Point*, 2017 IL App (1st) 162072, ¶ 22.

¶ 26        A condominium board's ability to ratify a prior action was also implicitly recognized in *Alliance Property Management, Ltd. v. Forest Villa of Countryside Condominium Ass'n*, 2015 IL App (1st) 150169, ¶ 41. In that decision, the court stated " ' "For ratification to occur, the principal must, with full knowledge of the act, manifest an intent to abide and be bound by the transaction." ' *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 56 (2009) (quoting *Stathis v. Geldermann, Inc.,* 295 Ill. App. 3d 844, 858 (1998))."

¶ 27        Majewska next claims that the Board never voted to ratify its prior actions in an open meeting. That claim is refuted by the record, however. The minutes from a "Manager's Meeting" held on October 20, 2020, expressly state that, with a quorum of its members present, the board unanimously ratified previous Board decisions "to send to legal counsel requesting a notice of

10

violation of architectural approvals, guidelines and provisions of the Declaration to non-compliant owner," "to authorize legal counsel to send violation/notice demand to owner regarding violation of architectural approval, guidelines and provisions of the Declaration," and "to authorize legal counsel, upon expiration of deadline for compliance, to file lawsuit against owner in violation of architectural approval, guidelines and provisions of the Declaration." Moreover, as the court in *Lake Point* concluded, a condominium association is not required "to prove that it properly noticed and conducted an association board meeting where a vote was taken to authorize" its actions. *Lake Point*, 2017 IL App (1st) 162072, ¶ 15 (citing *North Spaulding Condominium Ass'n v. Cavanaugh*, 2017 IL App (1st) 160870, ¶ 22).

¶ 28    Although Majewska contends that the minutes from the Manager's Meeting were insufficient to support the Association's claim, she failed to raise that argument before the trial court. Thus, it is forfeited on appeal. *PNC Bank, National Ass'n v. Kusmierz*, 2022 IL 126606, ¶ 34.

¶ 29    Having thoroughly reviewed the record and the arguments of the parties, we agree with the trial court that: (1) the Association provided Majewska with sufficient notice of the alleged rules violation; and (2) that the board properly ratified its prior determinations that: (a) Majewska's ceiling renovation violated the rules; and (b) its legal counsel would notify Majewska of that finding and, subsequently, initiate the underlying lawsuit. Accordingly, we affirm the trial court's grant of the Association's summary judgment and denial of Majewska's summary judgment motion.

¶ 30                                    B. Attorney Fee Award

¶ 31    Majewska argues that the trial court abused its discretion in granting the Association's request for attorney fees. See *Palm v. 2800 Lake Shore Drive Condominium Ass'n*, 2013 IL

11

110505, ¶ 52 (stating the applicable standard of review). On appeal, the abuse-of-discretion standard is highly deferential, with reversal "occur[ring] only when the trial court's decision is arbitrary, fanciful, or unreasonable or where no reasonable person would take the view adopted by the trial court." *Haage v. Zavala*, 2021 IL 125918, ¶ 40.

¶ 32        Majewska asserts that the trial court abused its discretion by not considering the reasonableness of the award, which was for the full amount requested, and the fact that it was nearly half her unit's sale price and was not shown to bear any "reasonable connection between the fees and the amount involved in the litigation," as required in *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 984 (1987). The result was that she was "ostensibly punished for defending herself" despite having "meritorious defenses." She asks this court to vacate the fee award in its entirety or, alternatively, to reduce the amount to reflect only the fees paid since the entry of the judgment order, or vacate the award and replace it with "an *in rem* award relating to the condominium unit."

¶ 33        The Association's March 30, 2020, notification letter informed Majewska that "in accordance with the Declaration and Section 9.2 of the Act, all legal fees and costs incurred by the Association in addressing your violation shall be assessed to your account." In addition, paragraph 22 of the declaration states:

> "22. Remedies. In the event of any default by any Unit Owner under the provisions of the Act, Declaration, By-Laws or rules and regulations of the Association, the Association *** shall have each and all of the rights and remedies which may be provided for in the Act, Declaration, By-Laws or said rules and regulations or which may be available at law or in equity, and may prosecute any action *** against such defaulting Unit Owner and/or others *** *for damages or injunction or specific performance, or for judgment for*

12

*payment of money and collection thereof, \*\*\*, or for any other relief. All expenses of the*

*Association in connection with any such actions or proceedings, including court costs*

*and attorneys' fees and other fees and expenses and all damages, liquidated or otherwise,*

*together with interest thereon at the rate of seven percent (7%) per annum until paid,*

*shall be charged to and assessed against such defaulting Unit Owner*, and shall be added

to and deemed part of his respective share of the common expenses, and the Association

shall have a lien for all of the same \*\*\*." (Emphasis added.)

Section 9.2 of the Act reiterates the Association's right to a fee award, stating:

"(a) In the event of any default by any unit owner \*\*\* in the performance of his

obligations under this Act or under the declaration, bylaws, or the rules and regulations of

the board of managers, the board of managers or its agents shall have such rights and

remedies as provided in the Act or condominium instruments including the right to

maintain an eviction action \*\*\*.

(b) *Any attorneys' fees incurred by the Association arising out of a default by any unit*

*owner \*\*\* in the performance of any of the provisions of the condominium instruments,*

*rules and regulations or any applicable statute or ordinance shall be added to, and*

*deemed a part of, his respective share of the common expense.* (Emphasis added.) 765

ILCS 605/9.2(a), (b) (West 2022).

Thus, Majewska was on notice that she would be liable for the Association's attorney fees if she

were to be found in default "under the provisions of the Act, Declaration, By-Laws or rules and

regulations of the Association."

¶ 34    Majewska contends that the fee award must be reversed because the trial court did not

find that she was in "default," which "is a prerequisite for a finding that fees should be

13

reviewed." She does not, however, offer any legal authority to support that bare contention. Although the trial court's ruling did not use the word "default," the court expressly concluded that Majewska violated the terms of the declaration by failing to obtain the required Board approval prior to raising the height of her ceiling. That finding clearly demonstrates the court's finding that Majewska committed a breach/default of the terms of the declaration. Nothing requires the trial court to use the word "default" when rendering its ruling. Under the express terms of the declaration, the Association was entitled to seek its legal fees and costs after Majewska was determined to have violated the applicable rules.

¶ 35    Nonetheless, Majewska claims that "[t]here is absolutely no right of a condominium association to even seek a personal judgment or any judgment against a homeowner relating to allegations stemming from the Condominium Property Act – including Section 9.2(b) on which this trial judge relied in entering an attorney fee judgment." She asserts that the only remedies available to the Association are a lien on the owner's interest, a foreclosure action, or a forcible entry and detainer action. That claim is conclusively refuted, however, by paragraph 22 of the declaration, which expressly grants the Association "each and all of the rights and remedies which may be provided for in the Act, Declaration, By-Laws or said rules and regulations *or which may be available at law or in* equity," permitting it to seek and obtain "*damages or injunction or specific performance, or *** judgment for payment of money and collection thereof, ***, or for any other relief*." (Emphases added.) That paragraph also authorizes the Association to be awarded the costs of any successful legal action, "*including court costs and attorneys' fees* and other fees and expenses and all damages, liquidated or otherwise, together with interest thereon." (Emphasis added.) See also 765 ILCS 605/9.2(b) (West 2022) (providing that an association may be awarded the attorney fees related to a unit owner's default on any

14

condominium document or applicable statute). Here, the trial court's grant of the Association's request for attorney fees is entirely consistent with the applicable language.

¶ 36 Majewska next argues that any award had to be made *in rem* due to the Association's "limited authority" in homeowner disputes. In support, she cites *Board of Directors of Warren Boulevard Condominium Ass'n v. Milton*, 399 Ill. App. 3d 922 (2010). That decision involved a condominium association's action brought under the Forcible Entry and Detainer Act (735 ILCS 5/9–101 *et seq.* (West 2008)) that sought possession of the unit, an inherently *in rem* remedy, based on the owner's failure to pay the required assessments. *Milton*, 399 Ill. App. 3d at 923. Here, in contrast, the Association sought, and obtained, a permanent injunction requiring Majewska to restore the ceiling in her unit, and the space above it, to their original conditions. After successfully prosecuting that cause of action, the Association filed a petition for its attorney fees, as permitted under the declaration. It did not seek possession of Majewska's condominium unit. The types of legal actions and remedies at issue in *Milton* and the instant case are readily distinguishable. *Milton* does not require the trial court to enter an *in rem* award.

¶ 37 Majewska also claims that the trial court failed to conduct a "reasonableness analysis" "and simply entered judgment on whatever time the Plaintiff decided to bill its client," citing *LaHood v. Couri*, 236 Ill. App. 3d 641, 648-69 (1992). We initially note that the fee request in *Couri* is distinguishable because it was not supported by detailed billing records, in contrast to the lengthy compilation of detailed billing records attached to the Association's petition.

¶ 38 To establish the reasonableness of its fee request, the Association had to provide evidence on: (a) the specific services rendered; (b) the person who rendered the services; (c) the time expended; (d) the hourly rate charged; (e) the attorney's skill and standing; (f) the nature of the case; (g) the novelty and/or difficulty of the work and the issues; (h) the importance of the

15

matter; (i) the amount of responsibility involved; (j) the customary and usual charges for similar services; (k) the benefit received by the party; and (l) the reasonableness of the connection between those fees and the sums at issue in the case. *Kaiser v. MEPC American Properties, Inc.*, 164 Ill. App. 3d 978, 983-84 (1987). To support its request for fees, the Association included an affidavit from its counsel explaining her experience and the context underlying the need for various fees as well as detailed records about the legal services that had been performed.

¶ 39     At the hearing on the fee petition, the trial court both acknowledged and applied the relevant *Kaiser* factors. The trial court also noted that the Association had repeatedly and consistently stated its intent to apply the fee-shifting provision in the declaration if it won the case. The trial court expressly found that the hourly rate charged was reasonable, usual, and customary for the area and type of work and considered the qualifications of the Association's counsel as stated in her affidavit. Moreover, the court reviewed the trial docket, noting "that at every stage, every issue was litigated," which increased the fees incurred by the Association. The court considered specific issues that were raised and litigated, noting that some, such as Majewska's due process claim, were raised repeatedly, requiring the Association to relitigate the question each time. As the judge noted, "[i]t seems to the Court that a lot of time has been wasted with respect to this argument." The court also pointed out that defendant raised only a general objection to the total amount of fees requested, without objecting to any particular charge. Finally, the court expressly stated that the Association was not seeking fees incurred between December 20, 2022, and the petition's hearing, March 22, 2023, despite the need for counsel to make multiple appearances on the Association's behalf during that time. Based on our review of the fee petition, the supporting evidence offered by the Association, and the trial

16

court's statements at the hearing, the decision to grant the Association's fee petition was not an abuse of that court's sound discretion.

¶ 40                                III. CONCLUSION

¶ 41          For the reasons stated, we affirmed the orders of the Du Page County Circuit Court awarding summary judgment to the Association, as well as its requested fees.

¶ 42          Affirmed.