2022 IL App (1st) 210222-U

FIFTH DIVISION
January 21, 2022

No. 1-21-0222

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| GREENVIEW GARDENS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 2020 M1 700013 |
| | ) | |
| VANESSA WEREKO, | ) | Honorable, |
| | ) | James Wright and |
| Defendant-Appellant. | ) | Christ Stanley Stacey |
| | ) | Judges, Presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

*Held:* The trial court's orders granting plaintiff possession of the property and awarding judgment in favor of plaintiff and against defendant are affirmed.

¶ 1        This appeal is based on an eviction action filed by a condominium association against one of its unit owners based on unpaid condominium assessment fees. Defendant, Vanessa Wereko, appeals from the trial court's order entered on January 12, 2021, that denied her motion to quash. She is also appealing the trial court's January 22, 2021, order that granted possession of the subject property to plaintiff, Greenview Gardens Condominium Association (Association), and its February 4, 2021, order that awarded judgment in favor of the Association and against Wereko in the amount of $256.78, with an additional $2,302 in attorney fees and $752.18 in

costs, and denied her motion for Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018) sanctions.

On appeal, Wereko *pro se* contends that the trial court's orders are void *ab initio* because the trial

court did not have subject matter jurisdiction or personal jurisdiction. She contends the trial court

erred "in not dismissing the collections action as the provisions of the Forcible Entry and

Detainer Act for possession were not met." She argues the court erred when it awarded the

Association attorney fees and costs and denied her motion for sanctions under Rule 137. She

asserts that the Association violated the Fair Debt Collections Practices Act (FDCPA) (15 U.S.C.

§ 1692 *et seq.* (2018)). In August 2021, this court entered an order stating it would decide this

case on *pro se* Wereko's brief as a result of the Association's failure to file a response brief. We

affirm the trial court's orders.

¶ 2                                    I. BACKGROUND

¶ 3                                         Complaint

¶ 4        On January 2, 2020, the Association filed a verified complaint for possession of the

condominium unit and assessments against Wereko and unknown occupants. The Association

alleged as follows. Wereko was the owner of a condominium unit located at 7639 North

Greenview Avenue, Unit 1E, in Chicago (property). The Association is an "Illinois not-for-profit

corporation" that, among other things, collected and disbursed the assessments for the common

properties located at the building. Pursuant to sections 9-102 and 9-104.1 of the Illinois Code of

Civil Procedure (Code) (735 ILCS 5/9-102 (West 2020) (735 ILCS 5/9-104.1) (West 2020)), on

November 22, 2019, the Association sent Wereko a notice and demand for possession. The

notice was sent by certified mail with return receipt requested. For a period that ended January 2,

2020, Wereko owed the Association $4,176.38 plus interest, reasonable attorney fees, and costs.

Monthly assessments in the amount of $231.78 continued to accrue. Despite the Association's

demand, Wereko failed to pay the amount owned, so the Association was entitled to possession of the unit under section 9-111 of the Code (735 ILCS 5/9-111) (West 2020)).

¶ 5   The Association attached the notice and demand for possession to the complaint. The notice dated November 22, 2019, was addressed to Wereko at two addresses: 7639 N. Greenview Ave., #1, Chicago, Illinois, 60626 and Flat 6 Bloomsburg Mansions, 1316 Russell Square, London Wcib 5Er, 1. The notice and demand for possession stated, *inter alia*, as follows. Wereko was in default in the payment of her proportionate share of the common expenses and the amount that originally became due on August 30, 2015, consisted of the following: $4,101.38, which was the amount claimed through November 22, 2019; $200 in preparation fees for the demand, with a note that additional attorney fees would be fixed by the court; and $45 in costs. In order for Wereko to make her account current, she was to submit $4,346.38 in certified funds to the Association. Attached to the notice was an account statement for the property for the period of August 30, 2015, to December 1, 2019.

¶ 6                     Documents in the Common Law Record Regarding Service

¶ 7   The record contains an affidavit of service filed from the Sheriff's Office of Cook County, providing that the Sheriff's Office attempted to serve Wereko at the property on January 14, 2020. The affidavit contains a section with a header that states that "The named defendant was not served for the given reason below," and provides various reasons for why a defendant was not served. The Sheriff's Office marked the reason that stated, "not listed," and in the "explanation" section, the affidavit states in capital letters: "Not listed in dialer by first or last name. Gate locked no access." On January 22, 2020, the Association filed an *exparte* motion for appointment of a special process server. The motion stated that the Sheriff's Office attempted to serve Wereko on January 14, 2020, but did not do so. The court granted the Association's

request to appoint United Processing, Inc., as a special process server. On February 7, 2020, the Association filed an affidavit of attempted service from United Processing, Inc., which stated that service on Wereko was attempted at the property on January 30, 2020. Under the section entitled "Remarks," the affidavit stated as follows: "This is a large secured apartment complex of which I do not have access. Its [*sic*] surrounded by a gate. There is an intercom outside the gate and Vanessa Werecko [*sic*] is not listed here. No one came in or out at this time. I cannot gain access." Under the section "Comments/ Prev. Attempts," the affidavit stated:

"This is a double secured apartment complex and the defendants name is not listed on the intercom directory. While on site I attempt to call the defendant again as the defendant has not responded to the voicemail I left earlier this week. On this occasion my call was sent to voicemail. The defendant is not listed here. Even if I get past the main gate, each building has its own secured doors also."

The record contains a second affidavit filed on February 7, 2020, that contained the same statements in the "Remarks" section as the first affidavit, but under the "Comments/ Prev. Attempts" section, it stated:

"The defendant is not listed on the outside intercom. Even if I am able to access the main gate, each individual building has another set of secured doors. I attempted to reach the defendant by phone 2x and left messages, to date, no answer, no messages have been returned. Not listed. Unable to access."

¶ 8      On February 13, 2020, the Association filed a notarized affidavit for service by posting signed by its property manager, Westward, which provided that Wereko "cannot be found after diligent inquiry" and her place of residence "cannot be ascertained after diligent inquiry." The affidavit stated that Wereko's last known address was 1316 Russell Square, Flat 6

Bloomsburg Mansion, Bloomsbury, London, UK (London address). On February 13, 2020, the trial court entered a written order that granted the Association leave to serve Wereko by posting. The record contains an affidavit filed by the Sheriff's Office that provided that Wereko received notice by posting on March 13, 2020, at the Cook County Government Building, Chicago City Hall, and the Daley Center, and that a copy of the notice and demand was mailed to the property.

¶ 9                    Wereko's Motion to Quash Service and to Dismiss

¶ 10        On December 9, 2020, Wereko filed a *pro se* motion entitled "Two-Count Motion to Quash Service and to Dismiss." Under the section entitled "Count I: Motion to Quash," she asserted, *inter alia*, that the Association, through its agent, Westward Property Management (Westward), coordinated the move-in for an occupant at the property pursuant to a lease dated September 2, 2019, through September 20, 2020, and that Wereko was not an occupant of the property in January 2020. She stated that the Association had knowledge that she was living in the United States at that time. She requested the trial court enter an order to quash service of process pursuant to section 2-301(a) of the (Code) (735 ILCS 5/2-301(a) (West 2020)).

¶ 11        Under the section entitled, "Count II: Motion to Dismiss Pursuant to 2-615 and 2-619(a)," Wereko argued that she did not owe any overdue assessments and that the Association was in receipt of all assessment payments that she owed. She argued that the Association's complaint was "not warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, represents a willful abuse and waste of judicial resources to harass defendants, cause needless accruement of attorneys' fees and litigation costs and should be dismissed pursuant to Section 5/2-615(a)." She asserted that the Association's "willful conduct to continue to progress this claim despite receipt of payments warrants criminal prosecution outside Municipal notwithstanding the jurisdictional issue of unserved summons and

thus warrants dismissal pursuant to Section 5/2-619." Wereko's prayer for relief requested the court dismiss the Association's complaint based on sections 2-615 and 2-619.

¶ 12     In the Association's written response to Wereko's motion to quash, it asserted that it attempted to serve Wereko through the Sheriff's Office and then a special process server, both of which were unsuccessful. The Association argued that at the time of the service attempts, it had a P.O. Box address for Wereko, and the London address was the physical address it had, noting in a footnote that "[o]n December 29, 2020, Wereko contacted the Association's property manager and updated her address to a local, physical address." The Association asserted that after having advised the court of the failed service attempts, on February 13, 2020, the court granted the Association leave to serve Wereko by posting. The Association then served Wereko by posting and complied with all the statutory requirements and court orders regarding service. As for Wereko's motion to dismiss, the Association argued that Wereko failed to attach any documentation to substantiate her assertion in her motion that she had made all assessment payments. The Association argued that as of January 1, 2021, Wereko's account statement showed she owed $8,685.66.

¶ 13     On January 12, 2021, the court heard argument on Wereko's motions. After arguments on Wereko's motion to quash, the court denied her motion, stating that "[t]he reason why they were able to post because they represented that you were living out of the country." Thereafter, the court heard arguments on Wereko's motion to dismiss, which she had asserted in her motion that she brought pursuant to both sections 2-615 and 2-619 of the Code. She continued to argue that she had not been properly served. She also argued, *inter alia*, that the Association's claim was barred because she "settled this before they can prove that they served me." Wereko argued that she did now owe the Association and that for the year 2020, she paid

the Association $6,975.96, which included a cashier's check for $4,066.72 in March 2020 that the Association received. Wereko asserted she could prove that she made all of her payments. In response, the Association argued that it attached a copy of a ledger of Wereko's account as of January 1, 2021, showing that she had been making current assessment payments, but that she was still in arrears and owed money. The court denied Wereko's motion to dismiss. The court stated that Wereko did not meet her "burden to dismiss this matter" and "[t]here are no real affirmative defenses that have been offered."

¶ 14    On January 12, 2021, the trial court entered a written order that denied Wereko's motion to quash service, denied her motion to dismiss, and continued the case to January 21, 2021, for trial.

¶ 15    On January 19, 2021, the Association filed with the clerk of the circuit court a verified petition for attorney fees with an affidavit in support as well as a notarized affidavit from Alessandro Cassano, an employee of the Association's property manager, Westward Management Company (Westward). Attached to the affidavit was Wereko's January 19, 2021, account statement and Cassano averred that as of January 19, 2021, the balance on Wereko's account was $8,685.66, which included $4,130.38 in attorney fees. On January 20, 2021, Wereko filed a motion for Rule 137 sanctions against the Association, asserting, *inter alia,* that the Association had represented to the court that the London address was her last known address but that in December 2019, she had sent a fax to Westward that included a plumber's report showing an address for her in Vernon Hills, Illinois and that the Association had access to her and her agents to perform a due diligent inquiry as to her location.

¶ 16                     Trial—January 21, 2021

¶ 17    At trial, Alessandro Cassano, the property manager for the Association through Westward since October 2020, testified that he collected and maintained the records for the Association. He identified a copy of the November 22, 2019, notice and demand for possession that his company prepared for Wereko. The notice and demand was signed by the previous property manager and contained two addresses: 7639 North Greenview Avenue, 1E, Chicago, Illinois, 60626, and Flat 6, Bloomsburg Mansions, 1316 Russell Square, London WCIB 5ER, 1.

¶ 18    The notice and demand, which the trial court admitted into evidence, was notarized and provided, as previously described, that Wereko was in default in the payment of her proportionate share of the common expenses and the amount that originally became due on August 30, 2015, consisted of the following: $4,101.38, which was the amount claimed through November 22, 2019; $200 in preparation fees for the demand, with a note that additional attorney fees would be fixed by the court; and $45 in costs. The notice and demand also stated:

> "In order to bring your account current, you must submit the amount of $4,346.38 in certified funds (cashier's check or money order). This amount will increase with accruing late charges and your next monthly assessment. Should you not choose to pay any of these charges, including the legal fees, they must be adjudicated in a court of law." (Emphasis in original.)

¶ 19    The notice and demand contained a notarized "Certificate of Mailing," which stated:

> "The undersigned, being first duly sworn on oath deposes and says that (s)he mailed a copy of the foregoing Notice and Demand for Possession by enclosing the same in an envelope addressed to the above at the address above, and deposited same in the U.S. Mail at Chicago, Illinois, certified mail, return receipt requested and a copy by regular mail, before 5:30 p.m. on the date above, with proper postage."

8

Attached to the notice was an account statement for the property for the period of August 30, 2015, to December 1, 2019.

¶ 20    Cassano described the monthly ledger account statements that his company maintained for each unit owner. He testified that a monthly statement is a record of all transactions involving the account and includes information such as payments, charges, other debits and credits, and the running balance for the account. The monthly assessments populate each month and all other transactions, including payments, charges, and credits, are entered by either Cassano or the accounting department within 24 hours of receipt. Westward sends the monthly statements to each unit owner each month to advise them of the current status of their accounts. As the Association's agent, it is Westward's regular practice to make such a record and it is kept in the course of a regularly conducted business activity. Cassano identified a copy of the monthly ledger statement for Wereko's unit dated January 19, 2021, which showed a balance of $8,685.66. During a colloquy between the Association's counsel and the court, counsel informed the court that the $8,685.66 amount included $4,130.38 in attorney fees.

¶ 21    In cross-examination, Cassano testified that the addresses provided on the notice and demand was the address for the property and the London address. He testified that the address on the November 21, 2019, account statement, which was attached to the notice and demand, was the address for the property. Asked whether he could "speak to the discrepancy in terms of the address on the notice and demand for possession and the address on the actual statement that is attached to the notice and demand for possession?" Cassano responded, "All addresses are—should be all addresses affiliated with the unit owner." Wereko then asked: "So actually that wasn't my question. My question is, you have one address on your statement dated November 21st, 2019, and then you have two addresses a day later, November 22nd, 2019, where one is the

9

7639 and one is the Flat 6, Bloomsburg Mansions in London.***Is there a reason why you have two addresses on your Demand one day after and only one address on your statement?" The court sustained the Association's counsel's objection based on the question having been "asked and answered." Wereko then asked the court what Cassano's answer was, and the court responded, "They put on there all the addresses associated with the unit owner."

¶ 22       In response to Wereko's question to state the "address indicated" on the January 19, 2021, statement, Cassano responded that the address on the statement was 675 Lakeview Parkway, Number 5035, Vernon Hills, IL 60061. Asked "when you got this address, since it's different from what you stated for Exhibit 1 [the notice and demand]?" Cassano responded, "That I do not have an answer for. Whatever addresses are acquired and input by our unit owners are what we have on file."

¶ 23       Wereko, who represented herself *pro se*, testified on her own behalf. Wereko testified that Acorn Property Management was the Association's previous property management company. She identified an email that she sent to Acorn in December 2014 to inform Acorn that her address was 467 Pine Lake Circle, Vernon Hills, Illinois, 60061, and that she had been a resident there since August 2014. She testified that on January 30, 2020, she sent an email to Cory Ouellete, Westward's previous property manager, informing her that she was working with an agent to sell her unit and it was her understanding that she needed to notify Westward of her intent to sell.

¶ 24       Wereko testified that as of March 18, 2020, her account was paid in full. She presented a document that showed a summary of 12 payments she made to the Association from November 2019 to December 2020, and the court admitted the exhibit for the purpose of showing a demonstrative summary of the evidence. She testified that on March 11, 2020, she

became aware through Cory Ouellete that she owed $4,066.72. Thereafter, on March 18, 2020, she sent Westward a cashier's check payable to the Association in the amount of $4,066.72. Wereko testified that she had a FedEx receipt that proved the cashier's check was delivered to Westward. She asserted that the receipt also showed that her address was 675 Lakeview Parkway Unit 5035, Vernon Hills, Illinois, 60061. The court later denied Wereko's request to admit the receipt into evidence.

¶ 25    In the same envelope with the cashier's check, Wereko sent the Association an affidavit dated March 17, 2020. Wereko testified that in the affidavit, she stated that "the payment of $4,066.72 settles my account in full for all valid account charges including a monthly association fee and monthly late fee through March 2020 and prepays the monthly association fee for the month of April 2020." She testified that she stated in the affidavit that the cashier's check "was to satisfy all debts involving this unit."  Wereko also testified that the intent of the affidavit was for "it to settle assessments due and owing as represented by plaintiff's agent, Cory Ouellete, to me" and it "was not meant in any way, shape, or form to restrict payment for something that I was asked to pay." The Association's counsel objected to admitting the affidavit into evidence, and the court allowed it "for the purpose of showing it was sent," not for the truth of the matter asserted therein. Wereko presented a copy of her account statement for December 29, 2020, which showed that the Association had not credited her account with the $4,066.72 cashier's check.

¶ 26    Wereko also presented a copy of a letter she sent to the Association's attorney on July 27, 2020, in which she stated that she had not received a response from Westward as requested in her March 17, 2020, "correspondence." The court admitted the letter for the "limited purpose" of showing it was sent. Wereko presented a letter from Capital One addressed to her, informing her

that the March 16, 2020, check of $4,066.72 payable to the Association had not been cashed as of December 15, 2020. The court admitted the exhibit for "proving that [Wereko] got this letter."

¶ 27    During Wereko's testimony, there was a colloquy between the Association's counsel, the court, and Wereko regarding Wereko's summary of 12 payments that she had presented, and the Association's counsel acknowledged that every payment in her summary had been credited to her account except for the March 2020 cashier's check of $4,066.72 and the December 2020 $231.78 assessment payment. The court explained that if Wereko's payments on the summary were accounted for, including the $4,066.72 cashier's check, then the amount owed, not including attorney fees, was about $488.56 ($4,555.28, which was the amount the Association claimed Wereko owed not including attorney fees, less $4,066.72), and if the December 30, 2020, $231.78 assessment payment was also paid, the amount owed was $256.78.

¶ 28    In closing argument, the Association's counsel argued that Wereko admitted that the intent of her affidavit included with the March 2020 cashier's check was to clarify that the payment was for "full and final settlement of all valid debts." Counsel asserted that had Wereko not included the affidavit with the cashier's check, the Association would have cashed the check and credited it to her account.

¶ 29    In response, Wereko continued to argue that the notice and demand for possession dated November 19, 2019, had two addresses for her and that the Association did not establish that she had ever lived at or that the notice was mailed to the two addresses provided. She argued that she established that she had provided the Association's agent with an address for her in Vernon Hills, which had been effective since August 2014. She argued that she overpaid her assessments and that the Association's counsel admitted that it had the $4,066.72 cashier's check

and chose not to cash it. She argued that she did not intend to place any restrictions on the cashier's check when she included the affidavit with the check.

¶ 30    Following closing arguments, the court stated it found that the Association "met their burden of proof to a superior right of possession for the occupancy of the property based upon assessments due and owing." The court stated: "I am not certain as to the amount. I know that defendant was trying to get a proof of payment of a sum of money from the bank, and she didn't have time for it. And I also know that the attorney fee question is unresolved." The court further stated:

"The other problematic thing is that check that's floating out there. In her testimony, she claimed that she did not intend for—that it was a restriction. However, reasonable reading of it, a person in plaintiff's position could think it was restricted. But I think she's indicating that that's the case, that there's no problem cashing the check. If you can find and cash that check, and you can find payment of that December payment, we're talking a couple of hundred dollars. And then—but we don't know the amount of damages because of all these variables.

So we're going to continue it for essentially a proveup on those damages and Attorneys' fees. And we'll take into account, Defendant, all your arguments about why we're here, and we'll take into account all plaintiff's arguments why are we here, and we'll see what we can do with all of the damages, whether there's any attorneys' fees, how much, whether there's any assessments left, how much.

But there is a positive assessment which makes me compelled under the law to grant the right of possession. But we're going to stay that so that it's not going to go into effect for 60 days. So there's going to be a 60-day stay on that so you don't—so that's what'll happen

13

there."

The court also stated it would address Wereko's motion for sanctions on February 4, 2021.

¶ 31 On January 22, 2021, the court entered two written orders. One order was an eviction order that granted the Association possession of the property, stayed the order to March 22, 2021, and stated that the court "is not yet ruling on the money claim." The court's other written order stated that it had entered a separate eviction order contemporaneously and that enforcement of the order was stayed for 60 days. The court ordered the matter "scheduled for prove-up on the amounts due and owing, including attorneys fees, on February 4, 2021." The order also stated:

"Based upon the testimony in open court by defendant Wereko that she did not intend any statements in her affidavit (Defendant's Exhibit 16) to be a restrictive endorsement on her cashier's check (in the amount of $4,066.72) and based upon her representation that plaintiff's cashing of the cashier's check would not represent payment in full of the entire outstanding statement of account for the unit, and that she has no objection to the cashing of the check by plaintiff, the plaintiff may cash the cashier's check in the amount of $4,066.72 identified in defendant's Exhibits 16 and 17 without prejudice to its right to collect all amounts due."

¶ 32 On January 25, 2021, Wereko filed a "motion to vacate or reconsider the court's orders entered on January 12, 2021, and January 22, 2021."

¶ 33                                    February 4, 2021

¶ 34 Pursuant to the court's January 22, 2021, order, the case was continued to February 4, 2021, for "prove-up on amounts due and owing." At that court date, a colloquy occurred between the court, Wereko, and the Association's counsel regarding Wereko's payments, the cashier's check, and Wereko's affidavit that she had included with the check. During that discussion, the

14

court stated that Wereko's affidavit provided that the $4,066.72 cashier's check included a $25 late fee from March 2020 and the $231.78 April 2020 assessment but the cashier's check "payment really would have only satisfied the account as of the March 1st date."

¶ 35    Following further discussion, the court asked Wereko what it would take to get the cashier's check reissued. Wereko responded that she would "send an affidavit from my bank to Plaintiff, they sign the affidavit that they lost the check and that affidavit will be proof to my bank to reissue another check to Plaintiff." The court then stated:

> "I am going to consider that check—Let's get rid of that issue. You both acted
> reasonable in trying to—You acted reasonably, Ms. Defendant, in trying to put something
> down that showed the payment. I am not going to—It may have been their practice to
> send out a current payment statement, but that's what you did. And you received a check
> and you didn't want to cash it for reasons that I think could be reasonable.
>
> I do think it was clearly an attempt to pay off the matter. And that the only issue that
> got in the way was attorney's fees and—because you're only $257 off. So what I think
> that I will do is order this: At the time that I ordered the eviction, there was a balance
> due."

The court further stated that the balance due at the time of the eviction order was $256.78 and "we continued it today to get a little more clarification on the number to see if my accounting was accurate." The court then stated:

> "Given today's agreement between the parties that those two payments came in, at the
> time that December payment was made, that would have made the balance $256.78, not
> the $488.56 that I thought of back on January 21, 2021. I will say it another way. On
> January 21, 2021, I thought there was an outstanding amount of $488.56, but was

reluctant to enter judgement in that amount because I didn't know—because of that check and I didn't know about the cashier's check or this December payment.

Today we know that the payment in December was made, which means that back on January 21st, the amount due was $256.78 and so the order of eviction was entered properly. *** My order would be that as of January 21, 2021, the judgement [*sic*] order should have been $256.78. And I will order that *nunc pro tunc* to that date because that was—it was just waiting today for clarification."

The court also explained that the $4,066.72 cashier's check from March 2020 had been lost or was no longer negotiable and ordered defendant to take reasonable steps to reissue the check, with the Association to pay any processing fee.

¶ 36       The court then addressed Wereko's "motion to vacate or reconsider" filed on January 25, 2021, in which she argued that in March 2020, she had overpaid her assessments by $50. The court denied her motion, stating that the eviction order was entered properly because there was a $256.56 shortfall and "It was a cashier's check, so I'm assuming the money is there." As for attorney fees, the court awarded a total of $2,302 in legal fees and $752.18 in costs, noting that it allowed fees up until March 2020.

¶ 37       Thereafter, the court addressed Wereko's motion for Rule 137 sanctions that she had previously filed.[1] Wereko argued that when she sent her payment in March 2020, she thought she was making her account current. She asserted that she made that payment in good faith and the Association did not give her credit for it or contact her to discuss the restrictive endorsement. She argued, *inter alia*, that the Association had her most recent address, and it had a "conscious, intentional intent" not to serve her in Illinois. She argued that she fully paid her standard monthly

---

[1] Judge James Wright issued the oral and written orders on the motion for sanctions. Judge Christ Stanley Stacey issued all other orders.

payments, the Association's claim was "tortious," it knew where she was located, and it did nothing to contact her directly at any of her addresses in Vernon Hills, Illinois.

¶ 38    In response, the Association's counsel argued that it was Wereko's responsibility to pay her common expenses and the notice and demand for possession was a claim for over $4,000 of unpaid monthly assessments that had accrued, not one missing payment. The Association's counsel asserted that Wereko sought sanctions against counsel because the Association served her by posting, that the Association did not have a local address for Wereko, and the most recent physical address it had for her was the London address. The Association's counsel argued it served Wereko by posting in compliance with all court orders and statutory requirements. Counsel argued that Wereko could not prove that service by posting rose to the level of abuse of judicial resources required by Rule 137.

¶ 39    Following arguments, the court denied Wereko's motion for Rule 137 sanctions. In doing so, it found that the Association did not act unreasonably and stated that it "demonstrated the actions that they took to provide you with notice of this case." The court stated that the Association "got to the point where they asked for and received a motion to gain jurisdiction by publication. That means—Before they get to that point, that means they made attempts to serve you, were unsuccessful in doing that, so then they asked for a publication." The court concluded that the Association's actions were reasonable, noting it "tried to find you" and "took whatever steps they needed to take with the addresses they had to try to locate you and they couldn't find you." The court concluded that it did not "see anything that the Plaintiff did that was unreasonable that caused for Rule 137 sanctions."

¶ 40    At the end of the February 4, 2021, prove-up hearing, the court addressed its $256.78 calculation to "make it clear for the record" as to how it came to that number. The court stated

that according to the January 19, 2021, account statement, as of March 1, 2020, the balance was $6,515.74, which included $2,449.02 in legal fees. The court stated when the legal fees are subtracted from that number, the amount is $4,066.72, "which might have been the precise amount she was supposed to pay." The court then continued:

> "However, that being the true amount, she stated in the affidavit and in the endorsement that that fee also—that amount also included a $25 late fee and a $231.78 April assessment, but it didn't because those assessments were not included in that amount because as of March 1st it was $4,066.72 due and owing, therefore that amount did not satisfy the full amount of her current payment, having nothing to do with attorney's fees. I just want to make it clear I was not including attorney's fees in that amount so that on the trial date when the eviction was entered, in fact $256.78 was due and owing, which justifies that award."

¶ 41      On February 4, 2021, the court entered two written orders. In the first written order, the court stated: "A money judgment shall be awarded in the amount of $256.78 against Defendant an in favor of Plaintiff *nunc pro tunc* to January 21, 2021."[2] The court also stated that Wereko's "cashier's check dated March 16, 2020 in the amount of $4,066.72 shall be credited to [Wereko's] account upon receipt by [the Association] and [Wereko] shall take reasonable steps to obtain a reissuance of said check." The order provided that the Association or the Association's attorney "shall sign an affidavit stating that the check was lost in an effort to assist [Wereko] with the reissuance of said check" and that the Association "shall bear actual costs of any reissuance of said check." The order stated that the court awarded an additional money

---

[2] On February 5, 2021, the court issued an amended order, which corrected the January 21, 2021, date, as the court had issued its written ruling on January 22, 2021. The amended order provided that "Money judgment shall be awarded in the amount of $256.78 against Defendant and in favor Plaintiff *nunc pro tunc* to January 22, 2021."

18

judgment against Wereko in favor of the Association in the amount of $2,302 in reasonable attorney fees and $752.18 in costs. The order also denied Wereko's motion to vacate or reconsider the January 22, 2021, order and denied Wereko's motion to strike the Association's petition for attorney fees and costs.

¶ 42    On February 4, 2021, the court entered a separate written order that denied Wereko's Rule 137 sanctions.

¶ 43                                    II. ANALYSIS

¶ 44                            Subject Matter Jurisdiction

¶ 45    On appeal, Wereko *pro se* contends that the trial court's orders are void *ab initio* because the trial court did not have subject matter jurisdiction. She argues the court did not have subject matter jurisdiction because the Association failed to properly serve demand under section 9-104.1(c) of the Code (735 ILCS 5/9-104.1(c) (West 2020)). She argues that she was not served a 30-day notice at the London address or at the property and that the Association never established that the London address was associated with her. She asserts that the record showed that she had physical addresses in Vernon Hills, Illinois since 2015 and the Association never attempted to serve demand on Wereko at those addresses.

¶ 46    Under section 9-102(a)(7) of the Code, an eviction action may be maintained based on a unit owner's failure to pay condominium assessments after a Board of Managers, or its agents, serves demand under the requirements set forth in section 9-104.1 of the Code, which states, in relevant part, as follows:

    "(a) [I]n case of condominium property, the demand shall give the purchaser under
        such contract, or to the condominium unit owner, as the case may be, at least 30 days to
        satisfy the terms of the demand before an action is filed. In case of a condominium unit,

19

the demand shall set forth the amount claimed which must be paid within the time prescribed in the demand and the time period or periods when the amounts were originally due[.] ***

*** 

(c) The demand *** shall be served either personally upon such purchaser or condominium unit owner or by sending the demand thereof by registered or certified mail with return receipt requested to the last known address of such purchaser or condominium unit owner ***." 735 ILCS 5/9-104.1 (West 2018).

¶ 47  As previously discussed, Wereko asserts that the Association did not properly serve a demand on her pursuant to the requirements set forth above such that the court did not have subject matter jurisdiction. However, a failure to follow the requirements set forth above does not affect the circuit court's subject matter jurisdiction.

¶ 48  We review *de novo* the issue of whether a circuit court had subject matter jurisdiction. *Goodwin v. Matthews*, 2018 IL App (1st) 172141, ¶ 13. Subject matter jurisdiction is considered "the power of a court to hear and determine cases of the general class to which the proceeding in question belongs." *Goodwin*, 2018 IL App (1st) 172141, ¶ 14. Our supreme court has explained that "a 1964 constitutional amendment significantly altered the basis of circuit court jurisdiction, granting circuit courts original jurisdiction of all justiciable matters, and such powers of review of administrative action as may be provided by law." *LVNV Funding, LLC v. Trice*, 2015 IL 116129, ¶ 30 (citing Ill. Const. 1870, art. VI (amended 1964), § 9). "The current Illinois Constitution, adopted in 1970, retained this amendment and provides that 'Circuit Courts shall have original jurisdiction of all justiciable matters' and that 'Circuit Courts shall have such power to review administrative action as provided by law.' " *Id.* (quoting Ill. Const. 1970, art.

20

VI, § 9)). Thus, our supreme court has concluded that " 'to invoke the subject matter jurisdiction of the circuit court, a plaintiff's case, as framed by the complaint or petition, must present a justiciable matter.'" *Goodwin,* 2018 IL App (1st) 172141, ¶ 16 (quoting *Belleville Toyota, Inc. v. Toyota Motor Sales, U.S.A., Inc.,* 199 Ill. 2d 325, 334 (2002)). "A matter is considered justiciable when it presents 'a controversy appropriate for review by the court, in that it is definite and concrete, as opposed to hypothetical or moot, touching upon the legal relations of parties having adverse legal interests.' " *In re Megan G.,* 2015 IL App (2d) 140148, ¶ 20 (quoting *Belleville Toyota, Inc.,* 199 Ill. 2d at 335)).

¶ 49        Further, other than the circuit court's power to review administrative action, which is conferred by statute, "a circuit court's subject matter jurisdiction is conferred entirely by our state constitution." *Belleville Toyota, Inc*., 199 Ill. 2d at 334. "[T]he failure to comply with the statutory notice requirements may serve as a defense but it does not deprive the court of subject-matter jurisdiction." *Prairie Management Corp. v. Bell*, 289 Ill. App. 3d 746, 752 (1997) (citing *Morris v. Martin–Trigona*, 89 Ill. App. 3d 85 (1980). Thus, any alleged failure to strictly comply with notice requirements under the Code does not deprive the circuit court of subject matter jurisdiction. *Goodwin*, 2018 IL App (1st) 172141, ¶ 18.

¶ 50        Here, the Association's complaint alleged that Wereko failed to pay her condominium assessment fees. The Association's complaint is based on its right to use the Code to collect unpaid assessment fees under sections 9-102 and 9-104.1 of the Code. Accordingly, the complaint alleged a definite and concrete controversy and, therefore, a justiciable matter existed. See *Goodwin*, 2018 IL App (1st) 172141, ¶ 20 (the reviewing court concluded that the circuit court had subject matter jurisdiction, noting that the plaintiffs established the existence of a

justiciable matter, as the complaint "alleged a definite and concrete controversy" under the Act).

Thus, the trial court had subject matter jurisdiction.

¶ 51                                            Personal Jurisdiction

¶ 52        Wereko contends that the trial court did not have personal jurisdiction over her

because she was never properly served. She asserts she was never personally served and that

"[n]o affidavit of non-service exists in the record from the Cook County sheriff or special

process server of attempting service to the overseas address nor an affidavit of service to the

overseas address nor testimony that the overseas address was Defendant's usual place of abode."

She asserts that the Association knew her "usual place of abode" was in Vernon Hills, Illinois,

and that the Association never served her there.

¶ 53        We review *de novo* the issue of whether the trial court had personal jurisdiction over

Wereko. *In re Detention of Hardin*, 238 Ill. 2d 33, 39 (2010). "Personal jurisdiction may be

established either by service of process in accordance with statutory requirements or by a party's

voluntary submission to the court's jurisdiction." *BAC Home Loans Servicing, LP v. Mitchell*,

2014 IL 116311, ¶ 18. "A judgment entered without jurisdiction over the parties is void and may

be challenged at any time." *Deephaven Mortgage LLC v. Jones,* 2020 IL App (1st) 191468, ¶ 33.

¶ 54        Here, the record shows that the Association attempted to serve Wereko by the

Sheriff's Office and a special process server at the property. Thereafter, the trial court granted

the Association's motion to serve by posting. The record contains a notarized affidavit for

service by posting signed by the Association's property management company, which avers that

Wereko could not be found after diligent inquiry, that her place of residence could not be

ascertained after diligent inquiry, and that her last known place of residence was the London

address. The record contains an affidavit of service from the Sheriff's Office certifying that

22

notice was served by posting a copy at the Cook County Government Building, Chicago City Hall, and the Daley Center and that a copy was mailed to her at the property. The court denied Wereko's motion to quash service, noting that the Association was able to serve her by posting because it had represented that she was living out of the country.

¶ 55    A party may object to personal jurisdiction by filing a motion to quash service of process before any other pleading or motion other than a motion for extension of time to answer or otherwise appear. 735 ILCS 5/2-301(a) (West 2020). However, under section 2-301(c), an objecting party forfeits any error in the court's ruling on jurisdiction when the party takes part in further proceedings, unless the objection was that the party was not amenable to process issued by a court of this state. 735 ILCS 5/2-301(c) (West 2020). Specifically, section 2-301(c) states: "Error in ruling against the objecting party on the objection is waived by the party's taking part in further proceedings unless the objection is on the ground that the party is not amenable to process issued by a court of this State." *Id.* Stated differently, "if the objection is that defendant has not been properly served, that objection is waived by taking part in the proceedings. If the objection is that defendant could never be properly served, that objection is not waived by taking part in the proceedings. Where the objection is not waived it may be raised in an appeal." *Cameron v. Owens-Corning Fiberglas Corp.*, 296 Ill. App. 3d 978, 989-90 (1998) (J. Cook, specially concurring).

¶ 56    Applying the principles above, Wereko forfeited any error in the trial court's finding that it had personal jurisdiction. Wereko did not object to personal jurisdiction on the grounds that she could never be properly served process issued by a court in Illinois. She also took part in further proceedings and contested other matters other than the court's jurisdiction after her motion to quash. In Wereko's motion to dismiss, which she filed with her motion to quash, she

argued she did not owe the Association assessment fees and that she could prove she made all of her assessment payments. Before trial Wereko filed a motion for sanctions under Rule 137, arguing, *inter alia*, that the Association and its attorney did not perform a due diligent inquiry as to her location. She argued that since March 18, 2020, her account was overpaid, and the Association failed to credit her account or share her account statement with her. She requested the court enter sanctions against the Association and its attorney and grant her reasonable attorney fees and costs. Further, at trial, Wereko testified that as of March 18, 2020, her account was paid in full, and she presented a document that showed a summary of 12 payments she made to the Association from November 2019 to December 2020. During closing argument, she argued that she overpaid her assessments and that the Association's counsel admitted that it had the $4,066.72 cashier's check in March 2020 and chose not to cash it. Accordingly, Wereko's objection to any alleged error in the court's ruling on jurisdiction was forfeited by her participation in further proceedings.

¶ 57                                Illinois Code of Civil Procedure

¶ 58        Wereko contends the trial court erred when it did not dismiss the Association's complaint because it did not prove that it is entitled to possession of the unit. She argues that the Association did not prove that she failed or refused to pay either her share of common expenses or lawfully agreed upon expenses. Wereko asserts that the Association did not establish the amount she owed and that it did not credit her for several payments she made.

¶ 59        Under both the Condominium Property Act (765 ILCS 605/9.2(a) (West 2020)) and the Code (735 ILCS 5/9-102(a)(7) (West 2020)), "an association may maintain an eviction action against a unit owner who fails to pay any lawfully owed expenses." *Board of Directors of*

24

*Winnitt Park Condominium Association v. Bourdage*, 2021 IL App (1st) 192536, ¶ 33. Section 9-111(a) of the Code states as follows:

> "when the action is based upon the failure of an owner of a unit therein to pay when due his or her proportionate share of the common expenses of the property, or of any other expenses lawfully agreed upon or the amount of any unpaid fine, and if the court finds that the expenses or fines are due to the plaintiff, the plaintiff shall be entitled to the possession of the whole of the premises claimed, and the court shall enter an eviction order in favor of the plaintiff and judgment for the amount found due by the court including interest and late charges, if any, together with reasonable attorney's fees, if any, and for the plaintiff's costs." 735 ILCS 5/9-111(a) (West 2018).

The issues in an eviction action brought by a condominium association include whether assessments are unpaid, how much is due, and whether the court should award reasonable attorney fees to the association if successful. *North Spaulding Condominium Association v. Cavanaugh,* 2017 IL App (1st) 160870, ¶ 25.

¶ 60        Generally, the standard of review following a bench trial is whether the trial court's order or judgment is against the manifest weight of the evidence (*Reliable Fire Equipment Co. v. Arredondo,* 2011 IL 111871, ¶ 12), and we will defer to the trial court's factual findings unless they are against the manifest weight of the evidence (*Board of Directors of Winnitt Park Condominium Association*, 2021 IL App (1st) 192536, ¶ 33). A trial court's ruling is considered against the manifest weight of the evidence "only when the findings appear to be unreasonable, arbitrary, or not based on evidence, or when an opposite conclusion is apparent." *Vaughn v. City of Carbondale*, 2016 IL 119181, ¶ 23.

¶ 61    Under this standard, we give deference to the trial court because it is in the best position to observe the conduct of the parties and the weight to be given to the evidence (*State Place Condominium Association v. Magpayo*, 2016 IL App (1st) 140426, ¶ 21) and it "has a degree of familiarity with the evidence that a reviewing court cannot possibly obtain" (*In re D.F.,* 201 Ill. 2d 476, 499 (2002)). We therefore must not substitute our judgment for that of the trial court "regarding the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn." *In re D.F.,* 201 Ill. 2d 476, 499 (2002). We will not overturn a trial court's findings merely because we do not agree with the trial court or because we might have reached a different conclusion. *Board of Directors of Winnitt Park Condominium Association*, 2021 IL App (1st) 192536, ¶ 34 (quoting *Bazydlo v. Volant*, 164 Ill. 2d 207, 214 (1995)). "If the record contains any evidence to support the trial court's judgment, the judgment should be affirmed." *In re Estate of Wilson*, 238 Ill. 2d 519, 570 (2010).

¶ 62    Here, the Association's complaint filed in January 2020 asserted that Wereko owed $4,176.38, plus reasonable attorney fees. At trial, the Association presented a copy of Wereko's account ledger showing that, as of January 19, 2021, she owed $8,685.66, which included $4,130.38 in attorney fees and costs. The ledger contained a detailed account of credits and balances on her account from August 2015 to January 1, 2021. Although Wereko presented evidence that on March 18, 2020, she sent a $4,066.72 cashier's check to the Association, the check included an affidavit stating that it "was to satisfy all debts involving this unit." The court found that a "reasonable reading" of the affidavit and "a person in plaintiff's position could think it was restricted." The court also found that the cashier's check did not satisfy the amount owed on Wereko's account as of March 2020, because it did not include the April 2020 assessment fee of $231.78, or a $25 late free from March 2020. After hearing the evidence, the trial court found

that as of the date of trial, January 22, 2021, defendant owed $256.78 in unpaid fees. In doing so, the court accounted for the March 17, 2020, cashier's check of $4,066.72 and the December 2020 assessment fee of $231.78, and then concluded that on the date of the trial, Wereko owed $256.78 in condominium fees, which included the April 2020 assessment fee of $231.78 and the $25 late free from March 2020. From our review, the trial court's finding was not against the manifest weight of the evidence.

¶ 63       Further, as will be discussed below, "Illinois law not only permits, but requires that attorney fees incurred by the Association that arise out of a default be added to a unit owner's share of the common expenses" (*State Place Condominium Association v. Magpayo,* 2016 IL App (1st) 140426, ¶ 33) and recoverable attorney fees include fees "incurred by an association based on a unit owner's failure to pay" (*North Spaulding Condominium Association*, 2017 IL App (1st) 160870, ¶ 42). Here, in addition to finding that on the date of trial, Wereko owed $256.78 in fees, the court awarded a judgment in the amount of $2,302 in attorney fees and $752.18 in costs, which were fees and costs that had accrued from December 2019 to March 2020, such that the total money judgment against Wereko was $256.78, with an additional $2,302 in attorney fees and $752.18 in costs.

¶ 64       Accordingly, from our review of the record, we cannot find that the court's finding that Wereko had unpaid condominium fees is unreasonable, arbitrary, that an opposite conclusion is apparent, or that it was not based on the evidence. Thus, the court's orders granting possession of the property to the Association and awarding judgment in favor of the Association and against Wereko were not against the manifest weight of the evidence.

¶ 65        Wereko asserts that the Association's property manager, Cassano, was not employed by Westward until October 2020 and that, therefore, he lacked personal knowledge such that he could not testify about the January 19, 2021, account statement. We disagree.

¶ 66        Illinois Supreme Court Rule 236(a) provides as follows:

> "Any writing or record, whether in the form of any entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of the act, transaction, occurrence, or event, if made in the regular course of any business, and if it was the regular course of the business to make such a memorandum or record at the time of such an act, transaction, occurrence, or event or within a reasonable time thereafter. All other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but shall not affect its admissibility." Ill. S. Ct. R. 236(a) (eff. Aug. 1, 1992).

¶ 67        Here, Cassano testified that he collected and maintained the records for the Association. He described the monthly ledger account statements that Westward maintained for each unit owner and testified the monthly ledger statement was "a basic record on which we record all transactions involving that account." Westward sends the statements to all unit owners each month to advise them of their account. The transactions contained in the statements are received and entered by him or the accounting department and are made at or near the time of events appearing on the ledger. The monthly assessments populate each month, and all other transactions are entered by him or the accounting department with 24 hours of receipt. He testified that, as the Association's agent, it is Westward's regular practice to make such a record, and it is kept in the course of regularly conducted business activity. Cassano identified the

January 19, 2021, monthly ledger statement associated with Wereko's account, and testified it was made under the same procedures. Accordingly, applying Rule 236(a), Wereko's argument regarding Cassano not being employed by Westward until October 2020 does not affect the admissibility of his testimony about the account statement but rather goes to the weight of the evidence to be given it by the trial court. See *North Spaulding Condominium Association*, 2017 IL App (1st) 160870, ¶ 37 (concluding that the defendant's "argument regarding [the property manager] not being employed by Westward at the time the Notice and Demand was made and sent does not affect its admissibility, but rather goes the weight to be given it by the trier of fact") (citing Ill. S. Ct. R. 236(a) (eff. Aug. 1, 1992).

¶ 68 Wereko also contends that the Association did not meet the requirements for sending the demand set forth in section 9-102(a)(7) of the Code (735 ILCS 5/9-102(a)(7) (West 2018)). Under section 9-102(a)(7) of the Code, to maintain an action for eviction when a unit owner fails to pay her proportionate share of the common expenses, any other expenses lawfully agreed upon, or any unpaid fine, the Board of Managers, or its agents, must serve demand pursuant to the requirements set forth in section 9-104.1 of this Act. 735 ILCS 5/9-102(a)(7) (West 2018); *North Spaulding Condominium Association,* 2017 IL App (1st) 160870, ¶ 22. Under section 9-104.1, the demand shall give the unit owner "at least 30 days to satisfy the terms of the demand before an action is filed" and "the demand shall set forth the amount claimed which must be paid within the time prescribed in the demand and the time period or periods when the amounts were originally due," along with late charges, interest, and attorney fees. 735 ILCS 5/9-104.1(a) (West 2018); *North Spaulding Condominium Association*, 2017 IL App (1st) 160870, ¶ 22.

¶ 69 Section 9-104.1(c) provides that the demand shall be served "either personally upon such *** condominium unit owner or by sending the demand thereof by registered or certified

mail with return receipt requested to the last known address of such *** condominium unit owner or in case no one is in the actual possession of the premises, then by posting the same on the premises." 735 ILCS 5/9-104.1(c) (West 2018). Effective service under the Code requires only that the demand be "sent by certified or registered mail to the last known address" and it "need not be received by the purchaser or condominium unit owner." *Id.* Further, "[s]ervice of the demand by registered or certified mail shall be deemed effective upon deposit in the United States mail with proper postage prepaid and addressed as provided in this subsection." *Id.*

¶ 70        Applying the principles above, we conclude that the record shows that the Association complied with sections 9-102 and 9-104.1 of the Code. At trial, the Association presented the notice and demand, which set forth the amount claimed, the time periods when the amount originally became due and owing, and provided that she had 30 days to make her payment before the Association instituted any action. The notice and demand provided that it was sent to the property as well as the address for defendant in London. It contained a notarized "Certificate of Mailing" section which stated that a copy of the notice and demand was mailed to the addresses provided by certified mail, return receipt requested, and a copy by regular mail, with proper postage. The record contains a notarized affidavit from the Association's agent attesting that Wereko's last known place of residence was the London address. Accordingly, from our review of the record, the Association complied with requirements for demand in the Code. The trial court's orders order that entered an eviction order and judgment against Wereko over her argument that the Association did not properly serve demand under the Code were not against the manifest weight of the evidence.

¶ 71                        Attorney Fees

¶ 72     Wereko contends that plaintiff did not prove that it was entitled to attorney fees under the Condominium Property Act (765 ILCS 605/1 *et. seq.*) (West 2020)). Under section 605/9.2(b) of the Condominium Property Act, "[a]ny attorneys' fees incurred by the Association arising out of a default by any unit owner***shall be added to, and deemed a part of, his respective share of the common expense." 765 ILCS 605/9.2(b) (West 2020). Section 9-111(a) of the Code also provides that a condominium association may recover reasonable attorney fees. *North Spaulding Condominium Association*, 2017 IL App (1st) 160870, ¶ 42 (citing 735 ILCS 5/9-111(a) (West 2014)). "Illinois law not only permits, but requires that attorney fees incurred by the Association that arise out of a default be added to a unit owner's share of the common expenses*." State Place Condominium Association,* 2016 IL App (1st) 140426, ¶ 33.

¶ 73     Here, as previously discussed, the court found that as of the date of trial, Wereko had failed to pay the full amount owed on her account. Recoverable attorney fees include fees "incurred by an association based on a unit owner's failure to pay." *North Spaulding Condominium Association*, 2017 IL App (1st) 160870, ¶ 42. Thus, the court properly determined that the Association was entitled to recover reasonable attorney fees based on her failure to pay. The court reviewed the Association's verified petition for fees and awarded the Association $2,302 in attorney fees and $752.18 in costs, noting that it was only awarding fees that incurred from December 2019 through March 19, 2020, when the Association received the check that contained the restrictive endorsement. It is within the trial court's discretion to award attorney fees, and we will not reverse the ruling absent an abuse of discretion. *North Spaulding Condominium Association*, 2017 IL App (1st) 160870, ¶ 43. From our review of the record and verified fee petition, we cannot find that the court abused its discretion in entering an award in favor of the Association in the amount of $2,302 for attorney fees and $752.18 in costs.

¶ 74                              Wereko's Motion to Reconsider

¶ 75      Wereko contends the trial court abused its discretion when it denied her motion to

vacate or reconsider because she did not owe any assessments and because the court did not

"reconsider its invalid eviction order."

¶ 76      "The purpose of a motion to reconsider is to bring to the trial court's attention a

change in the law, an error in the trial court's previous application of existing law, or newly

discovered evidence that was not available at the time of the prior hearing or decision."

*Horlacher v. Cohen*, 2017 IL App (1st) 162712, ¶ 79. If a motion to reconsider is based on new

matters, such as additional facts or new arguments or legal theories not presented during the

course of the proceedings leading to the order being challenged, we apply an abuse-of-discretion

standard. *Liceaga v. Baez*, 2019 IL App (1st) 181170, ¶ 26. However, when we review a motion

to reconsider that is based on a trial court's "purported misapplication of existing law, our

standard of review is *de novo*." *Horlacher*, 2017 IL App (1st) 162712, ¶ 80.

¶ 77      Here, in Wereko's motion to reconsider, she asserted the same arguments she had

previously made during the course of the proceedings, including, *inter alia*, that the Association

did not establish that she owed any unpaid assessments. As previously discussed, the trial court

properly found that Wereko had unpaid fees and properly entered the eviction order and

judgment against Wereko. Thus, the trial court did not err when it denied her motion to

reconsider over her argument that the court improperly entered the eviction order because the

Association did not establish she owed fees.

¶ 78      Wereko also argued in her motion to reconsider that by "receiving the payment after

initiating collections" the Association "elected to act as a collection agency without a license."

(Emphasis in original.) She asserted that under the condominium bylaws, the Association had an

32

"additional responsibility***to provide notice of any unpaid assessments to unit owners before contacting an attorney for collections" and it did not do so. She stated: "As of March 11, 2020, [the Association's] agent had already 'placed [her] account with the Association's attorney for collection'; [the Association's] decision not to credit her timely payment, seven (7) days after, to bring her account 'current', was to protract the period of default for a claim on legal fees and by doing so violated the condo bylaws and the FDCPA." To the extent that Wereko argued new theories in her motion to reconsider based on the Illinois Collection Agency Act (225 ILCS 425/1 *et seq.*) (West 2018)) and Fair Debt Collections Practices Act (FDCPA) (15 U.S.C. § 1692 *et seq.* (2018)), from our review of the record, the trial court did not abuse its discretion when it denied her motion to reconsider.

¶ 79                    Collection Agency Act and Fair Debt Collection Practices Act

¶ 80        Wereko contends that the Association violated the Collection Agency Act (225 ILCS 425/1) (West 2018)) and FDCPA. As for the Collection Agency Act, she asserts, as she did in her motion to reconsider, that "[b]y receiving Defendant's March 2020 payment, after initiating collections, Plaintiff's agent WESTWARD acted as a collections' agency without a license, operating outside its legal confines as a property management company." She asserts that the Association's agent, Westward, was named on the notice demand, but that Westward is not a collection agency as required by the Collection Agency Act.

¶ 81        Section 2.03 of the Collection Agency Act provides that the act does not apply to associations and their duly authorized agents when collecting assessments from unit owners. Specifically, it states:

"This Act does not apply to persons whose collection activities are confined to and are directly related to the operation of a business other than that of a collection agency, and specifically does not include the following

***

10. Unit Owner's Associations established under the Condominium Property Act, and their duly authorized agents, when collecting assessments from unit owners." 225 ILCS 425/2.03(10) (West 2018).

Thus, the Collection Agency Act does not apply to the Association's agent, Westward, when collecting assessments form unit owners. In addition, as previously discussed, under section 9-104.1(c) of the Code, to maintain an action, a Board of Manager, or its agents, must serve demand pursuant to the requirements set forth in that section, and the Association has demonstrated that it complied with the requirements for serving demand. Accordingly, we are unpersuaded by Wereko's argument that the Association violated the Collection Agency Act when it sent its notice and demand and attempted to collected unpaid assessment fees form Wereko.

¶ 82       As for the FDCPA, Wereko asserts that the Association and its agents "subsequent actions of 'not crediting payments received, to falsify the 'current balance' (225 ILCS 425/2) at trial violated the FDCPA 'which prohibits the use of false and unfair representations in the course of debt collection.' " Wereko cites generally to the FDCPA but does not cite to any specific section nor relevant case law to support its arguments that the Association violated the FDCPA. Illinois Supreme Court Rule 341(7) requires that the argument "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." Ill. S. Ct. R. 341(7) (eff. Oct. 1, 2020). "Failure to properly develop an

34

argument does 'not merit consideration on appeal and may be rejected for that reason alone.' "

*U.S. Bank Trust National Association v. Junior*, 2016 IL App (1st) 152109, ¶ 19 (quoting

*Housing Authority of Champaign County v. Lyles*, 395 Ill. App. 3d 1036, 1040 (2009)).

Accordingly, we reject Wereko's argument that the Association violated the FDCPA.

¶ 83                    Wereko's Motion for Sanctions under Rule 137

¶ 84        Wereko contends the trial court erred when it denied her request for sanctions

pursuant to Rule 137 against the Association and its agents. She asserts that the Association's

"unsupported allegations of fact were many but primarily revolved around misrepresentations on

defendant's domicile, that she cannot be found and a manufactured default driven by no notice of

charges and uncredited payments." She states that the court "admitted the waste of judicial

resources" and penalized her by awarding attorney fees and costs to the Association.

¶ 85        "Under Rule 137, a court may impose sanctions against a party or counsel who files a

motion or pleading that fails to have a well-grounded factual basis, that is not supported by

existing law or lacks a good-faith basis for a modification, reversal, or extension in the law, or

that is interposed for any improper purpose." *Peterson v. Randhava*, 313 Ill. App. 3d 1, 6-7

(2000). Rule 137 is to be strictly construed, and the purpose of the rule is to prevent frivolous

lawsuits, not to punish unsuccessful litigants. *Peterson,* 313 Ill. App. 3d at 7. Further, because

Rule 137 is penal nature, "courts must construe it strictly, must make sure the proposing party

has proven each element of the alleged violation with specificity, and should reserve sanctions

for the most egregious cases." *Webber v. Wight & Co.,* 368 Ill. App. 3d 1007, 1032 (2006). The

party seeking sanctions bears the burden of proof. *Technology Innovation Center, Inc. v.

Advanced Multiuser Technologies Corp.*, 315 Ill. App. 3d 238, 243 (2000). The party "must

demonstrate that the opposing litigant made untrue and false allegations without reasonable

cause." *Dismuke v. Rand Cook Auto Sales, Inc.*, 378 Ill. App. 3d 214, 217 (2007). A trial court's decision on motion for sanctions under Rule 137 is entrusted to the court's sound discretion and is overturned only when it appears from the record the court abused its discretion. *Technology Innovation Center, Inc.*, 315 Ill. App. 3d at 244. A trial court abuses its discretion only when no reasonable person would agree with its decision. *Lake Environmental, Inc. v. Arnold*, 2015 IL 118110, ¶ 16.

¶ 86        Here, as previously stated, Wereko's argument is based primarily on the Association's representations regarding her address and its assertion in its affidavit for service by posting that she could not be found. The trial court denied Wereko's motion for sanctions and concluded that the Association did not act unreasonably, noting that it demonstrated the actions that it took to provide notice and it tried to find her and "took whatever steps they needed to take with the addresses they had to try to locate" her. From our review of the record, there is nothing to support that the Association made any untrue and false allegations without reasonable cause such that sanctions would be appropriate. Thus, we cannot find the trial court abused its direction when it denied Wereko's motion for sanctions.

¶ 87        Wereko's Request for Sanctions under Illinois Supreme Court Rule 375(b)

¶ 88        Wereko contends that we should impose sanctions against the Association and its attorney under Illinois Supreme Court Rule 375(b) (eff. Feb. 1, 1994). Rule 375(b) in part states:

> "If, after consideration of an appeal or other action pursued in a reviewing court, it is
> determined that the appeal or other action itself is frivolous, or that an appeal or other
> action was not taken in good faith, for an improper purpose, such as to harass or to cause
> unnecessary delay or needless increase in the cost of litigation, or the manner of
> prosecuting or defending the appeal or other action is for such purpose, an appropriate

sanction may be imposed upon any party or the attorney or attorneys of the party or parties." Ill. S. Ct. R. Rule 375(b) (eff. Feb. 1, 1994).

¶ 89    Rule 375(b) allows a reviewing court to sanction an attorney if it determines that an appeal or other action in a reviewing court is frivolous or not taken in good faith. *Garlick v. Bloomingdale Township*, 2018 IL App (2d) 171013, ¶ 59. Here, Wereko was the party who filed the appeal in this court. Rule 375(b) is not appropriate in this matter, and we decline to impose sanctions against the Association.

¶ 90                            III. CONCLUSION

¶ 91    In sum, the trial court's orders that granted possession of the property to the Association and awarded money judgment against Wereko in favor of the Association were proper. For the reasons explained above, we affirm the trial court's judgment.

¶ 92    Affirmed.